AMY PORTER, Appellant, v. MADRID STATE BANK.

**New trial:** DISCRETION: VERDICT UPON INSUFFICIENT EVIDENCE. The trial court in its discretion may grant a new trial on reasonable grounds for believing that an erroneous verdict has been reached,

so that the facts may be passed upon by another jury; and where there is reasonable ground for so believing the appellate court will not interfere with the ruling. But the rule affecting the exercise of discretion by the appellate court in interfering with concurring verdicts should be taken into account in granting a second new trial under similar circumstances.

**Same:** EVIDENCE. In this action to recover an alleged over payment in the discharge of a note, the evidence is reviewed and held to authorize the court, in an exercise of its discretion, to set aside the verdict as being without sufficient support in the evidence.

**Evidence:** BOOKS OF ACCOUNT: MEMORANDA. Books of account showing continuous dealings with persons generally, when properly identified and verified, are admissible as independent evidence, though not conclusive; but memoranda kept on blank sheets or on the blank pages of a book not intended for or used as an account book, and relating to a single transaction, are not admissible as independent evidence, although they may be used for the purpose of refreshing the recollection.

*Appeal from Boone District Court.*—HON. C. G. LEE, Judge.

MONDAY, JUNE 10, 1912.

ACTION to recover back $259.44 with interest, as the amount overpaid in the discharge of a note. There was a verdict for the plaintiff in the amount claimed, and she appeals from the ruling of the court sustaining a motion for a new trial.—*Affirmed.*

*Stevens, Fry & Stevens,* for appellant.

*Harpel & Cedarquist,* for appellee.

McCLAIN, C. J.—Many grounds for new trial were alleged in plaintiff's motion, but the court recited in its rulings sustaining the motion that it did so as to the first and second grounds thereof, and these are the only grounds which need be considered. They are, first, "that the

verdict is not sustained by sufficient evidence"; and, second, "that the verdict is a result of a failure on the part of the jury to comprehend and understand the evidence, and is one that no reasonable man understanding and comprehending the evidence would agree to as just and correct."

I. It is conceded for appellant that this court on appeal is reluctant to interfere with the exercise of a discretion by the trial court in granting a new trial, but it is claimed that where there is such conflict in the evidence as to take the case to the jury— that is, where the evidence is such that a directed verdict would not be warranted— the granting of a new trial on account of insufficiency of the evidence is necessarily erroneous. We do not so understand the numerous rulings of this court sustaining the lower court in the granting of new trials. On the other hand, it has been specifically decided that, although the evidence is conflicting and the case was properly submitted to the jury, the court may, in the exercise of a sound discretion and on reasonable grounds of belief that an erroneous verdict has been reached, grant a new trial in order that the facts may be passed upon by another jury. It does not necessarily follow that the court might persist in granting new trials, and thus defeat recovery by a party who is able to satisfy successive juries that he is entitled to a verdict. We might reasonably hold that it was an abuse of discretion to set aside a second verdict to the same effect on the same evidence. Some force may reasonably be given to the concurrence of two or more juries in reaching the same result. See *Grimmelman v. Union Pacific R. Co.*, 101 Iowa, 74; *Slocum v. Knosby*, 80 Iowa, 368, and cases there cited. The rule which affects the exercise of discretion on the part of this court in interfering with concurring verdicts should be taken into account by the

*[margin note: 1. NEW TRIAL: discretion: verdict upon insufficient evidence.]*

trial court in granting a new trial under similar circumstances.

But we have repeatedly held that we will not interfere with the action of the lower court in granting a new trial where there is reasonable ground to believe that an unjust result has been reached which may be obviated on a trial to another jury. *Bottineau Land & Loan Co. v. Hintze*, 150 Iowa, 646; *Brooks v. Brotherhood of American Yeomen*, 115 Iowa, 588; *Hill v. Denslinger*, 61 Iowa, 240; *Moran v. Harris*, 63 Iowa, 390; *Engs v. Priest*, 65 Iowa, 232; *Holman v. Omaha & C. B. R. & B. Co.*, 110 Iowa, 485.

As against the clear expression of the views of this court on the subject, counsel for appellant rely solely on the case of *Hensley v. Davidson Bros. Co.*, 135 Iowa, 106, but we find nothing in the views expressed in that case by the majority of the court to indicate that there was any intention to override the rule so often announced in previous cases. The effect of the holding of the court in that case was that, after this court has on appeal overruled the lower court in deciding that under the evidence a verdict for a party should not have been directed, the lower court should not on its own motion set aside a verdict against such party on substantially the same evidence. The majority of the court was of the opinion that, when its view as to the sufficiency of the evidence to sustain a verdict had been expressed, the lower court on a second trial of the case should not have disregarded such expression of view by setting aside on its own motion a verdict on the same evidence.

II. As the only question to be determined on this appeal is whether the lower court erred in granting a new trial in view of the evidence presented in the record, we have occasion to state such evidence and our conclusion based thereon only in sufficient detail as may be necessary to justify our conclusions in

2. SAME: evidence.

that respect, without attempting to say whether, if we think a new trial was properly granted, the trial court ought to have directed a verdict for the defendant.

The controversy related to the payment of a note for $1,000, due in five years, bearing six percent annual interest, dated January 8, 1902, payable to the defendant bank, and signed by Eva A. Graves and W. P. Graves. There was a stipulation on the note that the makers have the option after three years of paying $100, or a multiple thereof, on any interest paying day. This note was secured by a mortgage on a tract of land, which tract was purchased by plaintiff from W. P. Graves, one of the signers of the note, in December, 1906; plaintiff assuming the payment of the mortgage. On the note there were regular indorsements of interest payments annually until and including January 8, 1908, which are not questioned. The remaining indorsement on the note showed payment on January 8, 1909, of interest to that date and $300 on the principal. When, in January, 1910, plaintiff, through her agent, undertook to pay off the balance of the note in full, the bank insisted had $700 with accrued interest on that amount was due, the aggregate amount claimed being $742, while plaintiff insisted that only about $482 of principal and interest remained unpaid. Plaintiff paid the amount demanded; the defendant agreeing to repay whatever was unlawfully exacted. This suit is to recover the amount of the alleged overpayment.

Plaintiff and her brother, C. E. Porter, both unmarried, resided on a farm near the town of Madrid, and it would appear from the testimony in this case that C. E. Porter was in the habit of transacting business at the defendant bank for the plaintiff and also for himself. During the two years preceding the final payment of the note of plaintiff to which this controversy relates, C. E. Porter was indebted to the bank on at least two notes given in his own name, one for $640, the other for $1,400;

and it will assist in the proper understanding of the facts hereafter set out if we state that the substantial controversy is as to whether C. E. Porter paid $560 on his sister's note on July 30, 1908, for which no credit was indorsed on that note, or whether on that date he paid his own note of $640 with some accrued interest, which note is in evidence showing the bank's cancellation stamp as of that date, although, as C. E. Porter insisted, he, in fact, paid this note of his own on a date in September following.

Briefly the testimony of plaintiff and her brother, each corroborating the other as to all material facts, was that on July 30, 1908, plaintiff gave to her brother about $310 in cash with which he went to Madrid to make a payment of $560 on plaintiff's note, with the agreement between them that the brother should borrow from one Noland $250 in order to make such payment, and that, having borrowed such amount and given his own note for it, he paid the sum of $560 in cash to the cashier of the defendant bank, understanding that that amount was being indorsed on the note. C. E. Porter testified that the cashier thereupon made a pencil memorandum on the upper left-hand corner of the face of the note, showing $500 balance unpaid. In this connection it ought to be noticed that July 30th was not a date on which any interest was due, as the note bore annual interest payable January 8th of each year, and the indorsements which are not questioned showed payment of all interest installments up to January 8th of that year. Neither the plaintiff nor C. E. Porter give any explanation of a reason for desiring to pay nor of any arrangement with the cashier to pay $560 on that date.

It appears by the canceled note introduced in evidence that C. E. Porter did, in fact, give a note to one Wyeth on that date for $250, and it is explained by him that this note was for the money which he procured from Noland, and as to this fact there seems to be no controversy.

But from a check on the defendant bank introduced in evidence it appears that on the same date C. E. Porter received $350 in cash, and he explains the peculiar circumstance that he gave his note for $250 to get the money with which to make the payment on his sister's note on the same date on which he received $350 in cash by saying that he took the latter amount home with him and left it in his sister's keeping, using it two months later in paying off his own note for $640. Plaintiff and her brother testify further that on January 5, 1909, he paid for her $30 interest on her note, whereas the last indorsement on the note shows a payment on that date of $300 principal and one year's interest, which would be $60. Here again plaintiff and her brother fail to explain in their testimony why they should have thought the interest due at that time amounted to just $30. If $560 had been paid July 30, 1908, the interest due on the balance, no matter how the prior payment may have been applied, would not be $30. When C. E. Porter came to pay off the balance due on his sister's note in January, 1910, he found a penciled memorandum on the upper left-hand corner of the face of the note to the effect that there was $700 balance unpaid, and he testifies that he is sure that the memorandum made July 30, 1908, was of $500 balance which had been subsequently changed to $700 balance. We have the note before us, and can discover no indication of erasure or change in the memorandum which is now "700. bal." If this memorandum was made in January, 1909, it corresponds to the fact as indicated by the indorsement of principal and interest made at that time, whereas if the memorandum was of $500 balance July 30, 1908, after payment of $560, it would not correspond to the fact.

The testimony of plaintiff and her brother is supported by certain vague memoranda on sheets of two wall calendars on which she testified that she made entries at the times

of the transactions above referred to and by certain memor-

3. EVIDENCE: books of account: memoranda.

anda on the blank pages of a little patent medicine book which she testified were also made on the dates of the transactions. We have the originals of these memoranda before us, and it is sufficient to say that they are not very satisfactory in character. The memoranda in the book show no other transaction than those relating to this particular note, although during the years from 1906 to 1910, inclusive, being the first and last years of these memoranda, she handled other sums of money of considerable amounts. These memoranda on the calendar and in the book were, of course, not admissible as independent evidence, because they did not show a continuous dealing with persons generally or several items of charge at different times in the same book or set of books. See Code, section 4623. But they were properly resorted to by plaintiff as a means of refreshing her recollection, and, having been properly identified by her as memoranda made at the time of the transactions to which they purported to relate, they were no doubt admissible in evidence.

On the other hand, the books of the bank, properly identified and verified by the officers who made the entries therein, constituted independent evidence of the facts which the entries made therein tended to show. They were such books as are referred to in the statutory provision just cited and speak for themselves. These books as evidence corroborate in every respect the indorsements on defendant's note already referred to; that is to say they show that on July 30, 1908, C. E. Porter paid $640 and interest due on his own note and that no payment whatever was made on plaintiff's note, that no payment of C. E. Porter's note of $640 was made on the date in September, when, as he contends, that note was paid off by him, and that on January 8, 1909, $300 and annual interest was paid on plaintiff's note instead of the sum of $30 interest, which

according to the testimony of herself and brother was then paid. In short, the plaintiff's theory as to the entire transaction is contradicted by the indorsements on her note and by the books of the bank as well as by the cancellation date on her brother's note for $640. Of course, bank books are not conclusive. They may be errenenous either by reason of mistake or through fraudulent entries, but no succession of mere mistakes could account for the discrepancy between the books of the bank and the testimony of plaintiff and her brother, and it is difficult to conceive of any systematic fraud which would result in an entry on the banks books of $640 of cash with a small amount of interest entered as paid by C. E. Porter on his own note July 30, 1908, when, according to his testimony, he paid only $560 to the bank on that date on his sister's note, and a further entry on those books of $360 paid on plaintiff's note on January 8, 1909, when, according to the testimony of plaintiff and her brother, only $30 was paid to the bank on that date. It is indeed true that the books show no payment of money to the bank by C. E. Porter on the date in September on which he claims that he paid his $640 note with interest, but here it must be suggested collaterally that his testimony as to this payment is peculiar. He says that he paid at this date in September the amount which would have been due on his note if paid July 30th preceding, although the bank would have been entitled to receive a further amount by way of interest, and he testified that he explained the transaction to his sister by saying that the bank had only charged him one month's interest, whereas three months' interest was due. It would be a very intricate system of fraud, indeed, which would involve an entry in July and again in January following of more money than he received by the bank in order to cover up an omission in September intervening of any entry of the payment of C. E. Porter's note. The books of the bank show on these respective dates that the cash balances were

at least substantially correct, and the entries on July 30, 1908, and January 8, 1909, can only be explained in accordance with the testimony for plaintiff on the theory that some one put money into the bank on those dates for which he received no credit. We are satisfied that the trial judge in the exercise of a reasonable discretion was justified in reaching the conclusion that the verdict was not sustained by sufficient evidence, and was the result of a failure on the part of the jury to comprehend the weight of the evidence submitted. It well might be that in attempting to unravel the complicated evidence involving bank books, notes, memoranda, and oral testimony the jurors failed to comprehend the relative bearing of these items of evidence on the question at issue. We are satisfied that the court properly set the verdict aside and ordered a new trial for the purpose of having this evidence passed on by another jury.

A motion has been submitted with the case to strike out certain portions of the appellee's amended abstract. These portions are simply recitals as to the appearance and characteristics of instruments of evidence introduced which the jury was authorized to take into account, and which we must take into account in understanding the weight which should be given to the evidence. In no other way save by photographic or other reproduction could these facts be made to appear. We think they were properly made to appear in this way. However that may be, the originals are before us, and appellant has suffered no prejudice from the recitals in the amended abstract. The motion is therefore overruled.

The order of the lower court granting a new trial is *affirmed*.