IN RE ESTATE OF ISABELLE MERRILL.

CLEM BUTLER, Proponent, Appellee, v. LAURA E. BUTLER, Contestant, Appellant.

**APPEAL AND ERROR:** Reservation of Grounds—Absence of Objections. Error may not be predicated on the asking and answering of a question to which complainant has entered no objection whatever.

**APPEAL AND ERROR:** Right of Review—Waiver of Improper Argument. A party may not withhold his objection to an improper argument until after verdict.

**TRIAL:** Instructions—Conflicting Instructions. Instructions relative to what proponent in a will contest must establish reviewed, and held not conflicting.

**TRIAL:** Deliberations by Jury—Use of Unauthorized Evidence. Prejudicial error results from permitting a jury to take with them to their jury room and to consider the entire sheet of a letter when only the signature thereon was introduced in evidence, and when the unintroduced matter is materially prejudicial to complainant.

**TRIAL:** Deliberations of Jury—Evidence Proffered by Juror. The assertion by a juror during the deliberations of the jury that one of the interested litigants had "approached" him and attempted to "influence" him may constitute prejudicial error. (See Book of Anno., Vol. 1, Sec. 11550, Anno. 236 *et seq.*)

Headnote 1: 3 C. J. p. 808. Headnote 2: 3 C. J. pp. 745, 864. Headnote 3: 38 Cyc. p. 1605; 40 Cyc. p. 1334. Headnote 4: 38 Cyc. pp. 1832, 1833, 1834. Headnote 5: 38 Cyc. p. 1828.

Headnote 1: 2 R. C. L. 90. Headnote 2: 2 R. C. L. 96. Headnote 4: 20 A. L. R. 1202; 16 R. C. L. 305.

*Appeal from Polk District Court.*—LESTER L. THOMPSON, Judge.

DECEMBER 14, 1926.

Action for the probate of a will. There was a verdict for the proponent. The contestant appeals from the judgment admitting the will to probate.—*Reversed and remanded.*

*Carr, Cox, Evans & Riley* and *Lorentzen & Shepherd*, for appellant.

*Parsons & Mills* and *J. W. Pendy*, for appellee.

VERMILION, J.—The contestant, Laura E. Butler, is the mother and only heir at law of Isabelle Merrill, whose alleged will is in question. She is also the mother of Clem Butler, the proponent, and of two other children, Mrs. Florence Horseman and Fred Butler. The probate of the alleged will was resisted on the ground that it was not the will of Isabelle Merrill, and that the signature thereto was not her genuine signature.

I. Upon the questions of the execution of the will by the deceased and the genuineness of the signature thereto the evidence was in sharp and irreconcilable conflict. There was testimony from one of the subscribing witnesses and another woman, who claimed to have accompanied the deceased to an attorney's office, that the will was dictated by the attorney in their presence, and signed by the deceased and the witnesses. The other subscribing witness was not produced, and there was testimony tending to show that he could not be found. There was also testimony that the alleged will was thereafter in the possession of the deceased, and that the contestant stated, after her daughter's death, that there was a will of the purport of the instrument in question.

On the other hand, there was testimony that, on the purported date of the instrument, the deceased was at her mother's house during the hours when it was claimed by the proponent the will was executed at an attorney's office some distance away. There was also testimony from expert witnesses, who compared the purported signature with some of the genuine signatures of the deceased, that the former was not her signature, and that it was, in part, a tracing by the use of carbon paper, and in part written with an indelible pencil.

The alleged will was not produced or filed for probate for some months after the death of deceased, and there was testimony that proponent had been unable to find it, and was about to commence an action to probate a lost will, when he received it by registered mail from some unknown person, who gave a fictitious name or a false address. The instrument is typewritten upon two sheets. The provisions making disposition of property

are all upon the first, and only the formal concluding clause of the instrument, the attestation clause, and the signatures are upon the second. There was testimony tending to show that the two sheets were of a different character of paper; and they differed in appearance as respects the manner in which they had been handled and folded. There are many facts and circumstances appearing in the testimony tending to affect the credibility of various witnesses, and indicating much ill feeling between proponent and his brother and surviving sister, who appear to have taken a prominent part in carrying on the contest for their mother, who was suffering from a paralytic attack and did not attend the trial. We have said sufficient to show clearly that the questions presented were for the determination of the jury, and that we would not be warranted in interfering with the action of the court below in refusing to set aside the verdict because of insufficient evidence to sustain it.

II. Complaint is made that Mrs. Boone, a witness for contestant, was asked if she had not married a negro. The record discloses no timely objection to any question of that character.

1. APPEAL AND ERROR: reservation of grounds: absence of objections.

When asked if her husband was a negro, there was no objection, and she answered in the negative. There was no error here.

III. Complaint is also made of the comment of counsel for proponent upon this testimony in argument. There is a conflict as to what was in fact said; the showing is made by affi-

2. APPEAL AND ERROR: right of review: waiver of improper argument.

davits only; and no objection was made at the time. No prejudicial error appears. *Caplan v. Reynolds,* 191 Iowa 453.

IV. An instruction required the jury to find by a preponderance of the evidence that the signature on the alleged will was the genuine signature of the deceased, and that the instru-

3. TRIAL: instructions: conflicting instructions.

ment to which it was attached was the instrument upon which she placed her signature, before a verdict for the proponent could be returned. The instruction also said, in substance, that the burden was on the proponent to establish "each" of these propositions, and that, if "both" were so established, the verdict should be for the proponent; and that, if the jury failed to find that the proponent had "established by a preponderance of the evidence either" of such propositions, the verdict must be for the con-

testant. There is no merit in the claim that the instruction was conflicting, or that the concluding portion permitted a verdict for the proponent if either of the propositions stated was established.

V. An instruction on the subject of expert testimony relating to handwriting is criticized because, it is said, the statement therein made as to the character of such evidence applied to the entire testimony of the expert witnesses, and to their testimony as to observed facts, as well as to their statements of opinion. The complaint is without merit. The instruction referred only to the evidence given by experts by comparison of handwriting, as provided in Section 11278, Code of 1924, and the statute was set out in the instruction.

VI. During the cross-examination of one of the expert witnesses on handwriting offered by the contestant, counsel for proponent produced a writing bearing the signature of the deceased. The writing bore on its face evidence of being a part—one sheet—of a letter from the deceased to the proponent. The signature only was introduced in evidence by the contestant, as the genuine signature of the deceased. Although the letter itself was not in evidence, it was taken by the jury on retiring to the jury room. It was shown by the affidavits of two jurors, filed in support of the motion for a new trial, that the letter, or a portion of it, was read by other members of the jury, and that the verdict was, to a certain extent, based on the contents of the letter. One of the affiants stated that one juror said that the letter was enough to satisfy her. There was no denial on the part of any of the jurors of the statements in these affidavits.

4. TRIAL: deliberations by jury: use of unauthorized evidence.

The portion of the letter that went to the jury contained complaints of mistreatment of the contestant by her daughter Mrs. Horseman and her son Fred Butler, and evidenced a very friendly feeling toward the proponent. The son and daughter referred to in the letter were present, and, we assume from the tenor of the argument on behalf of contestant, were active in looking after her interests at the trial. They were witnesses in her behalf, and gave important testimony.

The obvious tendency of the statements in the letter over the signature of the deceased would be to prejudice the mind of the

reader against this son and daughter, and not only to affect the credit given them as witnesses, but to create the impression that they had been in the habit of imposing on their mother and selfishly abusing her kindness.

There was testimony that decedent had kept the alleged will in a book, and that, during her last sickness, Mrs. Horseman and Fred Butler had looked through the house and taken things away, and had looked partially through the library.

In view of this testimony, the delay in finding the will, the very unusual circumstances attending its production, the close connection of Mrs. Horseman and Fred Butler with the contest, and other circumstances appearing in the evidence, the statements in the letter severely criticizing them and their treatment of their mother might well have had a very persuasive influence on the minds of the jurors against the contestant. The letter was not in evidence, and the jury had no right to consider it.

It was also shown by the uncontradicted affidavit of a juror that one of the jurors stated, during the deliberation of the jury and before the verdict was found, that Mrs. Horseman had approached him during the trial in an attempt to influence him, and that a woman who would do such a thing was capable of doing anything. Such a thing, if it occurred, was, of course, highly improper, and rendered the offending party liable to punishment for contempt, and the juror, also, unless he immediately reported it to the court. Section 12542, Code of 1924. It is not the misconduct of one interested on behalf of the contestant, if it occurred, of which contestant does, or could, complain, but of the fact that such alleged misconduct was considered by the jury without its having been shown in evidence. It was the province of the court to mete out punishment for such a flagrant offense; not of the jury, in the absence of proof of the fact, to consider it, either as affecting the credibility of the witness or the rights of the parties.

5. TRIAL: deliberations of jury: evidence proffered by juror.

In *McLeod v. Humeston & S. R. Co.,* 71 Iowa 138, where a copy of the evidence taken at a coroner's inquest over the death of one killed in the same accident in which the plaintiff received the injury for which he sued, was inadvertently taken and read by the jurors, we said:

"The evidence in question being capable of influencing the

jury, and unlawfully before them, there can be no assurance that their verdict was the result of the consideration alone of the lawful evidence in the case. The jury were exposed to unlawful influence; it cannot be said that none of them yielded thereto. The law requires, to the end that a correct and pure administration of justice be attained, that the verdict be regarded as tainted with the misbehavior of the jury in taking and reading the evidence, and be set aside. This is the only course of safety. No other rule will secure the jury from attempts to introduce for their consideration evidence of this character, or other matters which have not come to them through the hands of the court, —the only channel through which lawful evidence can reach them. These views are based upon familiar elementary principles.''

See, also, *Douglass v. Agne,* 125 Iowa 67; *Cresswell v. Wainwright,* 154 Iowa 167; *Jolly v. Doolittle,* 169 Iowa 658; *State v. Wegener,* 180 Iowa 102; *State v. Salmer,* 181 Iowa 280; *Conway v. Alexander,* 200 Iowa 705. Where a document not in evidence in the case is improperly considered by the jury, that fact, without further inquiry as to its effect, is ground for a new trial. *Kruidenier Bros. v. Shields,* 77 Iowa 504.

The court should have granted a new trial because of the misconduct of the jury in the respects mentioned, in considering matters not in evidence, in arriving at the verdict.

Other questions argued are not likely to arise on a retrial. For the error pointed out, the judgment is reversed, and the cause remanded.—*Reversed and remanded.*

De Graff, C. J., and Stevens and Faville, JJ., concur.