HELEN HAWKINS, Appellee, v. ORVILLE BURTON et al., Appellants.

No. 44313.

October 25, 1938.

Rehearing Denied January 20, 1939.

O. M. Slaymaker and G. F. Hoffman, for appellee.

Stephens, Thornell & Millhone, and Baker & Parrish, for appellants.

Donegan, J.—About 10:30 o'clock on the morning of October 24, 1935, Helen Hawkins, the plaintiff in this case, was riding in the front seat of a 1928 Chrysler four-door sedan, which was being driven by one Robert Lindsey, a young man about 23 years of age. The rear seat of the sedan was occupied by Helen Hawkins' mother and a Mrs. Eva Cain. This car was traveling from Leon, Iowa, to Des Moines and had reached a point on U. S. Highway 69, about two miles south of Indianola, where a bridge crosses South river. About the time the Chrysler sedan approached the bridge from the south a truck owned by the defendant, Farmers Elevator Company, and driven by the defendant, Orville Burton, came onto the bridge from the north, and, as this truck was nearing the southerly end of the bridge and the Chrysler sedan had gone onto the bridge, a collision occurred in which the plaintiff received personal injuries and the other three occupants of the car were killed.

This action was brought by the plaintiff for damages re-

sulting from personal injuries received by her, which she alleged were caused by the negligence of the driver of the defendant elevator company's truck. The case was tried to a jury which returned a verdict in favor of the defendants. Thereafter the plaintiff filed a motion for new trial based upon five grounds, which were, in substance: 1. That the verdict was the result of passion and prejudice; 2. that the verdict was contrary to law; 3. that the verdict was not supported by the evidence, but was contrary to the evidence; 4. that some of the jurors were guilty of improper conduct in that they made statements during their deliberations as to facts not in evidence which they claimed to know, and which influenced the jurors in reaching their verdict; 5. that the jury did not give the case fair and impartial consideration, made up their minds not from the evidence but from prejudice, and were able to impose upon other jurors and override them, and cause them to return a verdict that was the result of passion and prejudice and not the result of fair, candid and due deliberation. This motion for new trial was resisted by the defendants and, on hearing, the testimony of members of the jury was received in evidence by the court. The trial court, by written order, sustained the motion for new trial on all grounds, and from this order the defendants have appealed.

Several errors are alleged by appellants as grounds for reversal, but, in the view we take of this case, it will be unnecessary to consider all of them. There is a well-established rule that an order of a trial court granting a new trial will not be reversed by this court, unless it clearly appears that the trial court has abused its discretion. In Morton v. Equitable Life Ins. Co., 218 Iowa 846, 254 N. W. 325, we said [page 849 of 218 Iowa, page 326 of 254 N. W.]:

"It must appear clearly that there has been an abuse of the discretion lodged in the trial court before this court will interfere with a ruling granting a new trial."

See, also, Utilities Holding Corp. v. Chapman, 210 Iowa 994, 232 N. W. 116; Jordan v. Schantz, 220 Iowa 1251, 264 N. W. 259; Greene v. Lagerquist, 217 Iowa 718, 252 N. W. 94; Thomas v. Ill. Cent. R. R. Co., 169 Iowa 337, 151 N. W. 387.

One of appellants' contentions is that the trial court erred in granting a new trial because there was no evidence

to sustain any of the grounds of negligence alleged in the petition, and the trial court should have sustained the defendants' motion for a directed verdict made at the close of plaintiff's evidence and again at the close of all the evidence. It may be conceded that, if the plaintiff had failed to present evidence as to any of the grounds of negligence of which she claimed the defendants were guilty, the motion for a directed verdict should have been sustained, the case should not have been submitted to the jury, and a new trial should not have been granted. This rule, however, is confined to cases where the plaintiff fails to introduce evidence tending to show the negligence of the defendant. Where there is evidence in the record sufficient to make a conflict on this question an entirely different rule applies. It becomes important, therefore, to determine whether or not the record shows an entire lack of any evidence tending to show negligence on the part of the defendants, as alleged in the petition, which was the proximate cause of the accident.

■ One of the grounds of negligence alleged in the petition is that at the time of the collision the defendant, Burton, was driving the truck on the left-hand side of the paved part of the highway. It is true that the defendant, Burton, who was driving the truck, and one Turner, who was seated on his right and riding with him, both testified that the truck was at all times on the west side of the bridge and to the right of the two black lines in the center thereof; that, as the Chrysler car approached the bridge it was going at a speed of from 55 to 60 miles an hour, swerved over to the west (to its left) and beyond the two black lines in the center of the approach, continued to the west of said lines as it came onto the bridge, and then, as the driver apparently tried to turn to his right but failed to get his car completely over to the right side of the road, the rear part of the Chrysler car swerved or swung toward and struck the truck. The plaintiff, Helen Hawkins, who was rendered unconscious by the collision, testified that at no time while they were on the approach of the bridge or going onto the bridge itself was the Chrysler car on the left side or beyond the middle of the road or bridge, and further said:

"We had slowed down to between 25 and 30 miles when we went on to the south end of that bridge and we were on the right hand side of the road a foot from the east bannister.

We were in the middle of our side. We were on our side when we got to that point on the bridge where the south upright and the truss part is. We were not traveling on the west side of the middle of that paving at any time while we were in the vicinity of that bridge. I just remember coming to the upright. We were on our own right side of the bridge at that time. I don't recall anything further about this wreck there at that time."

The evidence shows that the main span, the bridge itself, was 102 feet long, that the approach from the south was 43 feet long, and that the distance between the guard rails or bannisters on the bridge was 18 feet, except that on the floor of the bridge there was a cement curb inside of each bannister which extended about 8 or 9 inches out from the bannister and was about 8 or 9 inches high. According to the testimony of the defendant, Burton, he had reached a point about midway between the north and south ends of the main span of the bridge when he saw the Chrysler car approaching the bridge around the curve on the approach to the south thereof. According to his own testimony the Chrysler car, at that time, must have been approximately from 60 to 70 feet away from the truck. He said the truck was going 25 to 30 miles an hour when the accident occurred and the Chrysler automobile was approaching at a speed of from 55 to 60 miles per hour. The testimony of Helen Hawkins, however, is that as they went onto the bridge they slowed down to between 25 to 30 miles an hour, which would make the speed of the Chrysler automobile about the same as that of the truck. If the speed of both the truck and the automobile was the same each would have traveled approximately 30 to 35 feet before the collision. This would have brought the truck to within about 15 or 20 feet of the south end of the bridge, and if, as testified by Helen Hawkins, the Chrysler was about the middle of the right side of the bridge and within about a foot from the east bannister "when we got to that point on the bridge where the south upright and the truss part is", we think the evidence was such that the jury could have found therefrom that the Chrysler did not thereafter, within the extremely short distance between it and the truck, and while the Chrysler and the truck were approaching each other at a speed from 25 to 30 miles an hour, go over onto the west half of the bridge and then turn back in such a way

as to swing its left side into the left side of the truck. The jury could have disbelieved the testimony of Burton and Turner that the truck was on the west half of the driveway on the bridge and, from the facts testified to by Helen Hawkins, could have found that the Chrysler continued on the east half of such driveway from the point where she placed it in her testimony while traveling the few feet between that point and the place where the collision occurred. The jury could thus have found that the collision occurred on the east half of the driveway over the bridge; that the defendant, Burton, was negligent in driving the truck on his left side of the driveway over the bridge at the time the accident occurred; that this negligence was the proximate cause of the accident; and that there was no negligence either on the part of Helen Hawkins or the driver of the Chrysler car that caused or contributed to cause the collision. The evidence, therefore, was not such that the trial court should have directed a verdict in favor of the defendants, and there was no error on the part of the trial court in refusing to sustain defendants' contention that, because their motion for a directed verdict should have been sustained, the motion for a new trial should have been overruled.

In In re Younggren's Estate, 225 Iowa 348, 280 N. W. 556, we said [page 349 of 225 Iowa, page 557 of 280 N. W.]:

"It is a rule of law that an order which grants a new trial on a numerous-pointed motion will not be interfered with on appeal when one of the grounds is that the verdict is contrary to the evidence and the record shows that the testimony is in conflict."

A reading of the Younggren case and the cases therein cited indicates the applicability of the rule there stated to the facts of the instant case. The motion for a new trial contained five separately numbered grounds; one of these grounds was that the verdict was contrary to the evidence; the written order sustaining the motion stated that it was sustained as to all grounds thereof; and what we have previously said in this opinion shows that there was a conflict in the evidence. This alone would seem sufficient to dispose of the appeal in this case, but, because appellants claim that the motion for a new trial in this case was not, in fact, sustained as to all grounds thereof, we proceed to a consideration of that contention.

Appellants allege that the trial court considered and ruled on only two grounds of the motion for new trial, which were as follows:

"4. That some of the jurors were guilty of improper conduct in that they told other jurors things that they claimed to know as facts and in that way made witnesses out of themselves and told things detrimental to and prejudical to the plaintiff's case, and these things influenced the jurors in returning the verdict that was returned in this case. In support hereof plaintiff will offer oral evidence on the hearing on this motion.

"5. That the jury in this case did not give the case fair and impartial consideration. That a large part of the jurors made up their minds not from the evidence but from prejudice and they were able to impose upon the other jurors and override them and caused them to return a verdict that was the result of passion and prejudice and not the result of fair, candid, and due deliberation."

A hearing was had on the motion for new trial at which all jurors, except one, were present and testified. At the close of such hearing and argument of counsel, the trial court orally reviewed the evidence and stated that the motion would be sustained by a signed order. In response to an inquiry of one of counsel for plaintiff as to whether the motion was sustained on all grounds, the trial court said: "Yes. There are just two grounds there." The written order entered by the trial court contains this statement:

"That after reading and hearing the motion, hearing evidence offered in support and against the same, and hearing and reading the affidavits in support of the same, I feel that said Motion for New Trial should be sustained on all of its grounds.

"It is therefore Ordered and Adjudged that plaintiff's motion for a New Trial filed in this case is hereby sustained on all of its grounds, and the verdict returned in this case by the jury is hereby set aside and held for naught, and this case is again to be tried in its regular order of assignment."

In the face of a record entry as plain and unequivocal as the above, we are satisfied that this court cannot assume that the motion was not sustained on all of its grounds. But, even if we be in error as to this, we are still satisfied that the order

of the trial court did not constitute an abuse of discretion for which this court can reverse. The matters presented by the two grounds of the motion for a new trial were, in substance: 1. That one of the jurors, a Mrs. Keller, during the deliberations of the jury, made the statement, in substance, that she knew Robert Lindsey and he was a fast driver; that she made this statement a few times, and that the statement was discussed by the jurors; 2. That when the jury visited the scene of the accident several of them watched cars approaching the bridge from the south and observed that nearly all such cars swerved to the left or west of the middle line of the approach, that this matter was mentioned by some of the jurors, and that some of them considered this when reaching their verdict. One of the jurors, Mr. McConnell, testified positively that the statement that she knew Robert Lindsey and that he was a fast driver was made by Mrs. Keller in the jury room during the deliberations of the jury, that there was some discussion of it, and that he had this statement in mind when reaching their verdict. Another juror testified that the statement was made in the jury room but she thought it was not made until after the verdict had been reached. Mrs. Keller positively denied making the statement and several of the jurors stated that they heard no such statement, and that the only time they heard any mention of speed or fast driving in connection with Lindsey was in the discussion of the evidence as to the speed at which he was driving at the time of the accident. While several of the jurors admitted that when at the scene of the accident they saw cars approaching the bridge and swerving to the west of the center line of the pavement, all except a few of them stated that they paid no attention to this fact in reaching their verdict. As already stated, all of the jurors, except one, who was absent and outside of the state, testified at the hearing on the motion for new trial, and the evidence received on this hearing was quite voluminous. In connection with the statement alleged to have been made by Mrs. Keller, the trial court, in reviewing the evidence and making his decision, said:

"Now, the Court in passing upon this matter, of course, has got to just make a finding of fact as to what he believes was said and done in the jury room. I, myself, have no doubt whatever but that Mrs. Keller made it sometime during the

course of the deliberations of the jury, that she made the statement as claimed by McConnell. I didn't have that idea at all when I came here to hear this trial this morning, but the testimony of these jurors and the attitude of the juror Keller herself satisfies the Court that for some reason she is not explaining to the Court just the way that things occurred in the jury room. Whether it is because she feels indignant over the filing of this Motion for new trial or what it is, there is something that has occurred that satisfies the Court that she is not explaining the matter to the Court as it really occurred in the jury room. I am satisfied she might not have said this statement to all the jurors. I know how jurors are in the jury room, they divide up into groups, some of them talk about one thing, some will be talking about another. I am satisfied, though, that this juror made the statement as claimed. It is not alone corroborated by the juror McConnell, it is corroborated by the lady juror who says that the statement was in substance made the same as McConnell claimed it, only she claimed it was made at a later period of time than when McConnell claimed it was made.''

In connection with the ground of the motion in reference to the jurors having observed the cars approaching the bridge and swinging out to the left or west side of the pavement and being influenced by this circumstance, the trial court said:

''Now, if the jury in this case paid any attention to the instructions of the Court at all, under the evidence in this case they could not have found that the plaintiff Helen Hawkins herself was guilty of any negligence by the way of contributory negligence which caused or brought about this collision. The jury had to find either that the driver Burton was guilty of negligence or that the driver of the Hawkins car Mr. Lindsey was guilty of reckless conduct or negligent conduct, which was the proximate cause of the collision.

''In this case, if the jurors felt that Robert Lindsey, when he drove that car down there, was driving at a fast rate of speed and he was across the line on the west side, on the wrong side, as far as he was concerned then, naturally they would have to find in favor of the defendants in this case. If they had the picture before them that cars that approach that bridge from the south, even at a moderate rate of speed, crossed to the west side of the line, if they had that idea in their mind when

they considered the case, certainly there was misconduct on their part to have that picture before them, and they may say in their testimony here as a juror they didn't consider it, but if a picture of that kind once gets upon the mind, upon the brain of a person, the picture isn't simply erased by simply saying they didn't consider it. They unconsciously would be affected by a situation of that kind.''

As explaining somewhat the decision of the trial court, we think this further statement is deserving of careful consideration:

''I think on the whole record in this case, in view of the fact this jury retired here at approximately noon and didn't get back to consider this case until one or one thirty and had arrived at a verdict, as the record shows in this case at 3:15 when the Court received the verdict, and the testimony is that they had already reached a verdict some considerable period of time before that, in view of the immense amount of testimony in this case, the immense amount of exhibits, the length of the instructions the Court had given the jurors and all, that this jury must have arrived in some way at a determination of this case without very serious consideration of the real issues that were involved in the case. Whether or not that was brought about by the statements that the Court thinks were made by the juror Keller to some of the other jurors at least, or whether it was brought about by the things the jurors themselves saw at the scene of the collision, the Court doesn't pretend to know, but the Court does believe in all fairness to the party plaintiff in this action a new trial should be awarded, * * *.''

The trial court was not only familiar with the evidence on the main trial, which, as the record shows, lasted several days, and with the matters set out in the instructions, all of which he deemed necessary to a proper consideration and determination of the case by the jury; but the trial court was particularly familiar with and, as his statement shows, carefully considered the evidence presented at the hearing on the motion for a new trial. His knowledge of the evidence, of the importance of a careful consideration of it in connection with the instructions, and especially his opportunity to observe the jurors when testifying at the hearing on the motion for new trial, placed him in

a much better position than is this court to determine the truth of the matters presented at such hearing. As his statement shows, the trial court was convinced that the statement alleged to have been made by the juror, Mrs. Keller, in the jury room, was actually made and was heard and discussed by some of the jurors, and that the things alleged to have been observed at the scene of the accident were actually observed by several of the jurors and would remain in their minds and be almost certain to influence their decision. When all of these matters are considered in connection with the brief time spent by the jury in deliberating on the great amount of evidence, the numerous exhibits and the extensive instructions before them, we cannot say that the trial court abused its discretion in granting a new trial. Griffin & Adams v. Harriman, 74 Iowa 436, at pages 438, 439, 38 N. W. 139; Douglass v. Agne, 125 Iowa 67, at page 71, 99 N. W. 550; Cresswell v. Wainwright, 154 Iowa 167, at page 186, 134 N. W. 594; Williamson v. Bunkers, 179 Iowa 485, 161 N. W. 449; Hydinger v. Chicago Railway Company, 126 Iowa 222, at page 224, 101 N. W. 746; Jolly v. Doolittle, 169 Iowa 658, at page 667, 149 N. W. 890; Wilberding v. City of Dubuque, 111 Iowa 484, at page 486, 82 N. W. 957; In re Estate of Merrill, 202 Iowa 837, 211 N. W. 361; Farmers Savings Bank v. Smith et al., 212 Iowa 529, 234 N. W. 798.

Appellee's motion to dismiss the appeal, which was submitted with the case, is overruled, and the order of the trial court granting a new trial is hereby affirmed.—Affirmed.

SAGER, C. J., and KINTZINGER, HAMILTON, and STIGER, JJ., concur.