IN RE ESTATE OF GODFREY GORETSKA.

CHRIS SORENSON, Administrator, Appellee, v. F. J. COUNSELL, Administrator, Appellant.

No. 46322.

MARCH 7, 1944.

REHEARING DENIED JUNE 9, 1944.

C. A. Smedal, of Ames, for appellant.

James L. Cameron and W. H. Soper, both of Eldora, for appellee.

MANTZ, J.—I.   About midnight, May 31, 1942, two automobiles traveling in opposite directions collided on a highway running east and west from Hubbard to Radcliffe in Hardin county of this state.   Each automobile had two occupants and all lost their lives as a result of the collision.   The highway at that point was practically level for some distance.   It had a blacktop surface, was twenty-four feet wide and was in good condition, with a firm, dry surface.   One of the automobiles was operated by Lester Sorenson, and Irvin Sorenson, a brother, was a passenger.   The other was then being operated by Godfrey Goretska, with his wife a passenger.   The two vehicles collided "head on" with such force that the front end of each was crushed and demolished and it required considerable force to pull them apart.   The Sorenson car was a Ford coach; the Goretska car was a Plymouth.   Both were in good condition before the collision.

Chris Sorenson, father of Irvin Sorenson, was appointed administrator of his estate, and filed a claim for damages against F. J. Counsell, administrator of the Godfrey Goretska estate.   Said claim set forth the matters and things on which the same was based, recited the death of Irvin Sorenson in the collision, his freedom from contributory negligence, the negligence of Godfrey Goretska, the result thereof, and the damage to the Irvin Sorenson estate.   In substance, the plaintiff claimed that Godfrey Goretska was negligent in that he failed to turn to the right and failed to yield the north half of the traveled portion of said highway to the car in which Irvin Sorenson, the deceased, was riding.   To this claim the administrator of the Godfrey Goretska estate filed a resistance or answer which in effect was a general denial.

The case was tried and the jury returned a verdict in favor of the defendant.   Plaintiff moved the court to set aside the verdict and grant a new trial, setting forth twelve grounds in such motion.   This motion was sustained generally by the court; the defendant excepted and appealed.

II.   The case presents several unusual features.   Two cars, each with two occupants, collided.   All of the occupants were killed.   In the suit brought on behalf of the passenger, Irvin Sorenson, but one ground of negligence was claimed, to wit, the

failure of the driver of the Goretska automobile to yield one half of the right of way. There were no eyewitnesses to the collision. The record fails to show objection to any question, answer, exhibit offered, argument of counsel or instruction given.

When the plaintiff rested and also at the conclusion of all of the testimony defendant moved the court to direct a verdict in his favor. The court overruled these motions and an exception was taken. The cause was then submitted to the jury and its verdict in favor of the defendant was later set aside, provoking this appeal.

In his printed brief and argument, appellant has set forth and argued thirteen separate propositions or assignments of error. It is his claim therein that in each the court erred and that by reason of such errors the ruling of the court in granting a new trial should be reversed.

The first proposition set forth by appellant is that the court in the first instance erred in failing to direct a verdict for the appellant when the appellee had rested its main case and also when both sides had rested.

The twelve other propositions of appellant are directed to the various grounds of appellee's motion to set aside the verdict of the jury and grant a new trial. Each of said respective propositions has been specifically set forth and argued.

We do not deem it necessary to take up and discuss these various propositions separately. We will first confine ourselves to a discussion of the first proposition which appellant makes, to wit, that the court erred in not directing a verdict in favor of the appellant. Upon this first proposition of appellant we think that under the record the court did not err in submitting the case to the jury. In fact, in view of the conflict in the evidence we think it would have been error for the court to rule otherwise. See In re Estate of Younggren, 225 Iowa 348, 280 N. W. 556; Brunssen v. Parker, 227 Iowa 1364, 291 N. W. 535, and cases there cited. There was but one ground of negligence alleged by appellee and that was the failure of the driver of the Goretska car to yield to the car in which the appellee's decedent was riding one half of the right of way or traveled track, as provided by law. There was a rather sharp conflict in the evidence as to the exact point at which the collision took place. The

surface of this highway was twenty-four feet wide, was of black top and there was no marked center line. There being no eyewitnesses, about all that could be shown were the physical facts appearing after the collision. Various witnesses described the position of the two cars following that time and also certain tracks and skid marks upon the pavement.

Under our holdings the failure to yield the right of way is not negligence per se but is simply prima facie evidence thereof. This, when considered in the light of the physical facts appearing in the record, made that issue a jury question. There was some evidence that the car in which Irvin Sorenson was riding was proceeding westward with none of the wheels south of the center of the highway. Other evidence contradicted this. Of course, it is a familiar rule that in passing upon a motion for a directed verdict the court must give favorable consideration to all of the evidence as against the party against whom the motion is directed. In passing upon the motion for a directed verdict we must not lose sight of the status of the deceased Irvin Sorenson. He was a passenger in the car, neither owning, operating, nor having control over the car in which he was riding. The negligence of his driver, if any, or the concurring negligence of the drivers of both of the cars, if any, would not be imputed to him unless he participated therein. Also, his administrator would be entitled to the benefit of the "no eyewitness" rule, under the record in the case. Of course, if the court, under the record, should have directed a verdict as moved for by appellant, the failure of the court to do so would have been error and the defendant (appellant) would have been entitled to keep his verdict regardless of what followed in the trial of the case.

III.   The real and decisive question in this appeal goes to the action of the court in setting aside the verdict of the jury and granting to the appellee a new trial. In fact, most of the argument on both sides is devoted to this question. Both parties recognize the fact that under our holdings a large discretion is vested in the trial court in this matter. Appellant argues that in this case there was an abuse of discretion by the lower court, while appellee argues that the court acted within its power and rights. Both sides cite numerous cases which they claim sustain the position taken by them on that question. In so doing they

have set out much of the evidence, some in considerable detail. Much of the detailed evidence has application to the first proposition argued by appellant, to wit, the failure of the court to direct a verdict in his favor. While we deem it unnecessary to set out here those parts detailed by the parties, we will later in the opinion set out some of the record in order to apply certain legal principles.

It may be helpful to set out some of the statutory law of our state dealing with the matter of setting aside verdicts and the granting of new trials.

Section 11549 of the Code of 1939 defines a new trial to be a re-examination in the same court of the issue of fact or some other portion thereof after a verdict by a jury, report of referee, or a decision by the court.

Section 11550 of said Code sets forth the grounds for a new trial. So far as same is material and applicable to this case, the ground relied upon by the appellee is as follows:

"6. That the verdict, report, or decision is not sustained by sufficient evidence, or is contrary to law."

Appellee's motion for a new trial, among other grounds, contained the following:

"1. The verdict is not supported by the evidence.

"2. That the verdict is contrary to the evidence. * * *

"5. That the uncontradicted and substantiated evidence * * * shows that the plaintiff was entitled to recover and that the verdict of the jury was contrary to the weight of evidence.

"6. That the verdict returned by the jury fails to do substantial justice, but on the contrary is an injustice to the plaintiff."

In addition to the statutory grounds authorizing courts to set aside verdicts and grant new trials, there are decisions from our own court and also from the courts of other jurisdictions holding that in such matters the courts have inherent power to set aside verdicts and to grant new trials.

While the lower court in setting aside the verdict did not act on its own motion but had before it a motion which was sus-

tained in general terms, yet, we think that there was involved to some extent in the court's ruling the question of the inherent right or power of the court to take such action.

The theory behind such holdings is the inherent power of courts to act if that power is necessary to prevent miscarriage of law and to promote justice. We call attention to a few of the Iowa cases supporting such power on the part of the court. Allen v. Wheeler, 54 Iowa 628, 7 N. W. 111; Hunt v. Des Moines City Ry. Co., 188 Iowa 1068, 177 N. W. 48; Brunssen v. Parker, supra, 227 Iowa 1364, 291 N. W. 535. In the case of Thomas v. Illinois Cent. R. R. Co., 169 Iowa 337, 341, 151 N. W. 387, 389, in speaking of the inherent power possessed by such court, it is said: "The judge is something more than a mere moderator." In the case of Hensley v. Davidson Bros. Co., 135 Iowa 106, 108, 112 N. W. 227, 14 Ann. Cas. 62, this court, speaking of this inherent power of the court, through Ladd, J., said:

"Our statute enumerates the grounds on which new trials shall be granted on application of the aggrieved party. Section 3755, Code. But there is no provision in the Code relating to orders of this kind on the court's own motion. That such right exists, however, is indisputable. It is one of the inherent powers of the court essential to the administration of justice. In Rex v. Gough, 2 Dong. 791, Lord Mansfield declared that, even though too late for a motion, if enough appeared, the court could grant a new trial, and in Rex v. Atkinson, 5 Term R. 437, note, is quoted as saying that, though too late for a motion, 'if the court conceive a doubt that justice is not done, it is never too late to grant a new trial.' "

In Weber v. Kirkendall, 44 Neb. 766, 769, 63 N. W. 35, 36, that court, speaking of the inherent power of the court to grant new trials, said:

"The rule thus recognized has not only the sanction of authority, but rests upon the soundest and most satisfactory reasons. The power is inherent in all courts of general jurisdiction to correct errors committed by them which are clearly prejudicial to the parties, and their power in that respect is exercised not alone on account of their solicitude for the rights

of the litigants, but also in justice to themselves as instruments provided for the impartial administration of the law.''

This court has on numerous occasions passed upon the right of the lower court to set aside verdicts and to grant new trials. These decisions started early in the history of this court and have continued down to this time. The general rule seems to be that the lower court is clothed with a broad judicial discretion in such matters and that such discretion and actions thereunder will be upheld except in the presence or showing of abuse of such discretion.

We desire to call attention to the language of the eminent jurist, Cole, J., as used in the case of Dewey v. Chicago & N. W. R. R. Co., 31 Iowa 373, 378, as follows:

''* * * they [district or circuit courts] ought to grant new trials whenever their superior and more comprehensive judgment teaches them that the verdict of the jury fails to administer substantial justice to the parties in the case. Whenever it appears that the jury have, from any cause, failed to respond truly to the real merits of the controversy, they have failed to do their duty, and the verdict ought to be set aside and a new trial granted.''

Generally speaking, a motion to set aside a verdict and grant a new trial is based upon certain definite matters which are claimed to justify the lower court in acting thereon. However, this is not necessarily required. This court has held that the granting by the lower court of a new trial, even in the absence of a motion, may be proper. It has also held that the court has power and authority to take such action without pointing out and specifying the ground therefor.

This court has held that in cases where there is a conflict of evidence, rendering a submission to the jury necessary, the court may intervene and set aside such verdict.

In the case of Morton v. Equitable L. Ins. Co., 218 Iowa 846, 254 N. W. 325, 96 A. L. R. 315, this court held that a new trial might properly be granted when the trial court was of the opinion that there had been a failure to do justice generally and that a broad discretion is lodged in the trial court to grant a new trial because of a series of errors against the defeated party,

even though no one of such errors would in and of itself be sufficient.

In re Estate of Younggren, supra, 225 Iowa 348, 280 N. W. 556, this court held, in sustaining the lower court, where the motion for a new trial contained five specific grounds, one being that the verdict is contrary to the evidence, as to which ground the record showed a conflict, that an order granting a new trial would not be disturbed on appeal in that the same was within the discretion of the trial court. See, also, Mitchell v. Des Moines City Ry. Co., 161 Iowa 100, 141 N. W. 43..

We quote from the language of the court in the case of Eby v. Sanford, 223 Iowa 805, 807, 273 N. W. 918, 919, where this court approved the action of the lower court in granting a new trial and therein said:

"The facts are in dispute. We are dealing in fractions of seconds, and courts cannot say as a matter of law which of the two parties was to blame. The question is for the jury to decide upon the evidence submitted."

In that case the motion to set aside the verdict was based upon seven different grounds and was sustained generally by the lower court. The court further said:

"Objections to certain instructions were made in the motion for a new trial. No good could be accomplished by setting out the various grounds contained in the motion. This court has continually said that the granting of a new trial is a matter resting largely in the discretion of the lower court, and the exercise of this discretion will not be interfered with unless it appears to have been abused."

In the case of Woodbury County v. Dougherty & Bryant Co., 161 Iowa 571, 573, 143 N. W. 416, 417, there was a verdict for the defendant. Upon motion the court set aside the verdict generally. Upon appeal this court sustained the lower court, and, speaking through Deemer, J., said:

"The trial court is vested with a large discretion in passing upon motions for a new trial, and this discretion will not be interfered with, especially when a new trial is granted, unless it appears that there has been an abuse of this discretion. The

reasons for this rule have so many times been given, that it is needless to do more than cite some of the cases in support thereof: Dewey v. Railroad Co., 31 Iowa, 373; Royer v. Plaster Co., 147 Iowa, 277; Holland v. Kelly, 149 Iowa, 391.

"Our reading of the record convinces us that the trial court did not abuse its discretion in setting this verdict aside, even if it were put upon the ground of the insufficiency of the testimony. In this regard a trial court exercises a somewhat different function than an appellate tribunal. A trial court is justified, indeed, it is its duty, to set aside a verdict which does not effectuate justice, although there may be a conflict in the testimony; and when this is done, appellate tribunals should be slow to interfere."

In the rather recent case of Brunssen v. Parker, supra, dealing with the appeal from the action of the lower court wherein that court had set aside a verdict returned in an automobile accident, this court, in sustaining the acts of the lower court, speaking through Oliver, J., said [227 Iowa 1364, 1365, 291 N. W. 535]:

"One of the grounds of the motion for new trial was that the verdict was contrary to the evidence. The motion was sustained generally. The evidence was in serious conflict. These elements bring this case squarely within the rule established by a long line of decisions that where the evidence is conflicting the order of a trial court granting a new trial upon the ground that the verdict is contrary to the evidence will not be reversed unless it clearly appears that there has been an abuse of the discretion lodged in the trial court. [Citing many cases.]

"The order also stated that under the entire record the court could not give its approval to the verdict and believed that in furtherance of justice the cause should be retried. If a party has not received a fair and impartial trial, the trial court has inherent power to set aside the verdict. [Citing Morton v. Equitable L. Ins. Co., 218 Iowa 846, 254 N. W. 325; Thomas v. Illinois Cent. R. R. Co., supra; In re Estate of Younggren, supra.]

"The remaining question is whether or not the trial court abused its discretion in setting aside the verdict and granting

a new trial. A careful examination of the record persuades us that there was no abuse of discretion in the ruling."

In the case of Porter v. Madrid State Bank, 155 Iowa 617, 620, 136 N. W. 666, 667, the lower court set aside the verdict of the jury rendered in favor of the plaintiff, basing its ruling upon the following grounds as set forth in the motion: (a) That the verdict was not sustained by sufficient evidence. (b) That the verdict was the result of a failure on the part of the jury to comprehend and understand the evidence, and is one that no reasonable man understanding and comprehending would agree to as just and correct. In sustaining the lower court, this court, speaking through McClain, J., said:

"* * * we have repeatedly held that we will not interfere with the action of the lower court in granting a new trial where there is reasonable ground to believe that an unjust result has been reached which may be obviated on a trial to another jury."

See, also, Mitchell v. Heaton, 227 Iowa 1071, 290 N. W. 39; Hawkins v. Burton, 225 Iowa 1138, 281 N. W. 790; Rupp v. Kohn, 210 Iowa 969, 232 N. W. 174.

Many other cases supporting the rule contended for by appellee might be cited but we think the foregoing are sufficient.

In the present case there was a sharp conflict in the evidence, making it necessary for the jury to pass upon such conflicts. There was no eyewitness, thereby giving rise to certain inferences. The deceased Irvin Sorenson was a passenger in the Sorenson automobile. The road was twenty-four feet wide and was substantially level, with a surface of black top, and no center markings. There was ample space for two cars to meet while traveling in opposite directions. As the center line of this highway was not marked, witnesses necessarily had to approximate somewhat in describing that point. Back of the point of the collision about eighty-three feet the Goretska car was proceeding eastward with the right or south wheels two feet north of the south edge of the black top. At about the same time the Sorenson automobile was approaching from the east and there was a conflict in the evidence as to whether its left wheels— that is, the ones nearest the center—were on or about the center of the highway or were a foot to a foot and a half south of the

1090

center. The evidence shows that the Goretska automobile, from the point eighty-three feet west of the collision, made a rather sweeping curve to its left in the direction of the center of the highway, and while in about the center of such highway collided with the Sorenson automobile. The results of the collision indicate that one or both of these cars were exercising considerable speed just prior to or at the time of the collision. About the only evidence available was in regard to the position of the cars after the collision and the various marks, including tire and skid tracks, on the highway. The marshal of Radcliffe and the sheriff of Hardin county came to the scene shortly following the collision and before either car had been moved. Both made observations and measurements. The sheriff made a sort of plat or diagram showing, among other things, the width of the highway, the point of collision, the tracks of the tires and their direction, with measurements. There was some conflict in the evidence on these points. The import of the testimony on this point was that at a point over eighty feet west of the point of the collision the Goretska car was headed eastward with its right or south wheels but a few feet north of the south edge of the black top, and that at the same time, beginning at a point about one hundred feet east of such collision point, the Sorenson car was headed westward with its left or south wheels on or close to the center of the highway. There was some evidence that such wheels were south of the center of said highway a few feet. The evidence tended to show that from the point indicated the Sorenson car did not change its course but that the Goretska car, beginning at the point indicated, some eighty feet west of the point of the collision, changed its course by curving to its left in a northeasterly direction and colliding with the Sorenson car at or near the center of said highway. It could be inferred that had the Goretska car not changed its course, as indicated by its tracks, there would have been no collision. Certain exhibits were received. Some of these show the cars in position following the collision: others indicate the marks made by the tires of the two cars. Here, certainly, was a conflict in the evidence. The matter was submitted to the jury. They found for the defendant. The trial judge who presided heard all the evidence, observed the jury and the witnesses, doubtless examined the various exhibits

which were shown, and had a close-up view of all matters connected with the trial, and it seems to us that he possessed the best means and opportunity to know whether the jury had properly passed upon the matter submitted to it for its consideration. It may be that the court felt that the jury disregarded certain parts of the evidence, or that the verdict in favor of the appellant was without sufficient support in the evidence, or that they had disregarded some of the instructions given, or that the verdict directly resulted in an injustice being done. Further, that the court may have taken such view of the situation in passing upon the motion for a new trial might be inferred by its ruling without giving any particular ground therefor.

As to whether this court would have reached the same or a different conclusion than the one reached by the trial court we express no opinion. The trial court had a right to act and did so. Appellant in his printed brief has cited many cases which hold that the trial court cannot substitute its opinion for that of the jury upon controverted matters. With these decisions we have no quarrel. We recognize the fact that such has been the holding of this court in various cases. We think, however, that a careful examination of these holdings will show that what the court did was in harmony with our repeated holdings; that is, where an abuse of discretion appears, we will not sustain the lower court. We recognize, too, that in many of the decisions involving such question the line of demarcation is somewhat hazy and uncertain, and in such cases we must to a certain extent rely upon the judgment and discretion of the trial court, exercised, as it were, on the very ground where the controversy is being tried. The rule announced stems out of the fundamental consideration that in court contests, so far as is humanly possible, the guiding light and sole purpose is the doing of justice.

We have gone over the entire record and it is our holding that the trial court did not abuse its discretion in sustaining the motion of appellee and in granting a new trial. Post v. City of Dubuque, 158 Iowa 224, 139 N. W. 471; 46 C. J. 406, section 465; Dewey v. Chicago & N. W. R. R. Co., supra, 31 Iowa 373.

In view of the fact that a retrial of this case must be

had we think it proper for us to refrain from a discussion of the evidence therein. Both parties in their briefs and arguments have quoted very liberally from the evidence, but, in view of the foregoing, we do not feel that we should comment thereon. The action of the lower court is affirmed.—Affirmed.

GARFIELD, WENNERSTRUM, HALE, and OLIVER, JJ., concur.

SMITH, C. J., and BLISS, MILLER, and MULRONEY, JJ., dissent.

SMITH, C. J. (dissenting)—This dissent is directed at Division III of the majority opinion. I agree that the issues were for the jury and that the court properly refused to direct a verdict for defendant. But upon what theory can the action of the trial court in setting aside the verdict and granting a new trial be upheld?

There is no conflict in the evidence. So far as the record shows the evidentiary facts are as definitely fixed as if stipulated. But concerning the ultimate facts—the inferences to be drawn by the jury from the undisputed physical facts—reasonable minds might well differ.

The grounds for new trial urged by appellee may be classified as follows: (1) The verdict is not supported by, but was contrary to, the evidence (2) the verdict is contrary to the instructions, and (3) the verdict fails to do substantial justice, is the result of passion and prejudice, is not the result of a fair and impartial trial, and is "basically wrong."

It will be noted that most of these come within the statutory enumeration of grounds for new trial but they also lap over into the field of "inherent power" of which the majority opinion speaks.

There can be no doubt this court has many times committed itself to the doctrine that the trial courts have a wide field of discretion in granting new trials where "the verdict of the jury fails to administer substantial justice" (Dewey v. Chicago & N. W. R. R. Co., 31 Iowa 373, 378); "when the verdict is against the weight of evidence, or against the truth of the case" (McKay v. Thorington, 15 Iowa 25, 28); "where there is reasonable ground to believe that an unjust result has been reached which may be obviated on a trial to another jury" (Porter v. Madrid State Bank, 155 Iowa 617, 620, 136 N. W. 666, 667);

where the verdict is "not fairly sustained by the evidence" (Bloomfield State Bank v. Seabury, 200 Iowa 37, 39, 204 N. W. 259, 260); where there are numerous rulings and "no one * * * in itself involves an error to justify the setting aside of a verdict, yet when taking all of the exceptions together and considering them in connection with the trial court's knowledge and observation of the course and conduct of the trial it may properly conclude that the moving party has not had a fair trial" (Holland v. Kelly, 149 Iowa 391, 393, 128 N. W. 338, 339).

There are so many cases on the subject that any adequate review of them is impracticable. But running through them are cautionary admonitions and qualifications that should be kept in mind.

In the McKay v. Thorington case, supra, 15 Iowa 25, 28, for instance, Judge Wright says:

"But to justify such interference, the mind should be brought irresistibly to the conclusion that the verdict was not the result of a free, sound and unbiased exercise of judgment on the part of the jury, and that manifest injustice would result if the verdict is permitted to stand. It is not every case of doubt, nor where there is apparent preponderance of evidence against the conclusion of the jury, that justifies a court in setting aside a verdict."

And in the Dewey case, supra, 31 Iowa 373, 378, Judge Cole admonishes:

"* * * yet judges ought to use caution in the exercise of the power so as not to invade the legitimate province of the jury when they have manifested a fair and intelligent consideration of the evidence submitted to them, nor to injuriously protract litigation in pursuit of invariable and absolute justice in every case, for this cannot be attained."

These are early examples, but similar cautions run through later cases. In Post v. City of Dubuque, 158 Iowa 224, 227, 139 N. W. 471, 472, while the decision of the district court granting a new trial was affirmed, the opinion, written by Justice Gaynor, after pointing out that the discretion of the trial court is a

"sound judicial discretion to be exercised with care, judgment, and sound discretion," goes on to say:

"That courts have no right to set aside the verdict of a jury through mere caprice or whim, or to reweigh the evidence submitted, or sit in judgment on the credibility of witnesses, is too well recognized to need argument."

In Hensley v. Davidson Bros. Co., 135 Iowa 106, 112, 112 N. W. 227, 229, 14 Ann. Cas. 62, the lower court had set aside a verdict on its own motion. This court reversed the lower court, saying:

"While the inherent right exists to make such a ruling, the grounds for doing so should be made to appear in the record. If the court does not do this, the party in whose favor the ruling is made, in protection of the record, may insist that the ground of the ruling be entered. This may be done by an appropriate motion and the action of the court made quite as intelligible as though it had waited for the parties to make up the record in the ordinary way and according to customary judicial procedure."

This same doctrine is stated in Euclid Avenue State Bk. v. Nesbit, 201 Iowa 506, 207 N. W. 761. In the latter case, however, the decision of the trial court was upheld on other grounds.

In our late case of Sparks v. Long, 234 Iowa 21, 23, 11 N. W. 2d 716, 718, we said:

"Everyone is entitled to a fair trial of the issues he tenders to a court or jury, but due regard for our judicial system compels that he be accorded but one fair trial."

The record here is entirely devoid of any objections to evidence or to any of the proceedings except to the court's failure to direct a verdict for defendant. At no stage of the proceedings up to the return of the verdict did anything occur that met an exception from the plaintiff or an expression of disapproval by the court. There is, as I have said, no conflict in the evidence but merely a possibility of different inferences being drawn from the uncontradicted testimony concerning the tracks on the roadway and the position of the cars after the acci-

dent. The four people concerned in the accident were the only eyewitnesses and they were all killed.

It was for the jury to say whether there was evidence of negligence of defendant's intestate's or of plaintiff's intestate's freedom from contributory negligence sufficient to meet the burden of proof which under the law rested upon plaintiff.

There is no record of any misconduct of counsel or jury or of any adverse ruling by the court. If the court in granting the new trial was exercising some "inherent right" the grounds for its exercise should have been made to appear in the record. Hensley v. Davidson Bros. Co., supra; Euclid Avenue State Bk. v. Nesbit, supra.

The case seems to be merely one in which the trial court drew a conclusion from the undisputed facts at variance with that drawn by the jury. It is hardly conceivable there can be any different record on new trial. Should another jury on new trial find for plaintiff, another trial judge could, with equal reason, set that verdict aside.

· With all due respect, I think the ruling of the trial court constituted an abuse of discretion and should be reversed.

BLISS, MILLER, and MULRONEY, JJ., join in this dissent.