| | |
|---|---|
| 117 | 442 |
| 117 | 462 |
| 117 | 442 |
| 119 | 530 |
| 119 | 533 |
| 117 | 442 |
| 137 | 365 |
| 117 | 442 |
| 138 | 508 |

·Edward Doran v.· Cedar Rapids & Marion City Railway Company, Appellant.

**Privileged Communications:** *Doctor consulted to be used as witness.* Under Code, section 4608, which prohibits a physician from disclosing any confidential communication, where an injured party consults a physician, and discloses to him his physical condition, he is prohibited from testifying as to such knowledge, except with the consent of the injured party, although he was consulted solely for the purpose of securing his testimony as a witness.

**Negligence:** FAILURE TO TAKE ANOTHER STREET. An instruction that if there was another and reasonably convenient street which plaintiff could have taken, and he did not know how his horses would act at the approach of an electric car from behind, it was negligence for him to take his horses along a street where defendant's cars ran, was properly refused, as the correct rule was stated in an instruction that, if plaintiff knew that it would be dangerous to take his horses along this street, it was his duty to go on another street if he could do so without serious inconvenience.

OF MOTORMAN. In an action against an electric railway, an instruction that it was not the duty of the motorman to stop the car or check its speed unless he saw plaintiff's horses showing signs of fright, but that it was only his duty to stop the car, as quickly as he could in the exercise of ordinary care, as soon

as he saw plaintiff's peril, was properly refused, as it was the further duty of the motorman to exercise reasonable care in discovering plaintiff's peril.

**Instructions:** PREPONDERANCE. *Where an instruction was given that the plaintiff must show by fair preponderance of the evidence that the material allegations of his petition were true,* 1 *it was harmless error to refuse to give an instruction defining the term "fair preponderence," and calling the attention of the jury to the opportunity of the witnesses to see and understand the things about which they testified and their interest in the outcome of the suit.*

**Degree of Proof:** *Harmless error.* Error in requiring the jury to 2 be "satisfied" as to matters which it was the duty of plaintiff to prove cannot have prejudiced defendant.

**Review on Appeal:** PASSION AND PREJUDICE: *Verdict reduced by trial court. Where the only evidence of passion and prejudice in a verdict against an electric railway company for personal* 5 *injuries and the loss of a horse was the fact that the trial court cut it down as being excessive, it will not be set aside on appeal on this account.*
Ladd, C. J., dissenting.

*Appeal from Linn District Court.*—Hon. Wm. G. Thomson, Judge.

Tuesday, June 3, 1902.

Action to recover damages for personal injuries and the loss of a horse, alleged to have been due to the negligence of defendant's motorman in operating a street car. Verdict for plaintiff for $8,300. On motion for new trial, the court gave the plaintiff the option of accepting a judgment for $4,500 or a new trial, and, plaintiff having elected to accept the reduction, judgment was rendered for that amount, from which defendant appeals.—*Affirmed.*

*W. E. Steele* and *Powell, Harmon & Powell* for appellant.

*Jamison & Smyth* and *John N. Hughes* for appellee.

McClain, J.—The injury complained of by plaintiff was received while he was riding on horseback along the boulevard connecting Cedar Rapids and Marion, leading a stallion. It was caused by a car of defendant, which was running along the street in the same direction in which plaintiff was going, coming in collision with him and the horse which he was riding. The horse was killed by the collision. Plaintiff's injuries are alleged to be serious and permanent, and he seeks to recover therefor, and in a separate count to recover the value of the horse, which belonged to one Bryant, the claim against defendant having been assigned by said Bryant to the plaintiff.

The grounds of negligence stated in the petition are that defendant's employe operating the car could, in the exercise of ordinary care, have discovered plaintiff's peril in time to have stopped the car and prevented the injury; that after he discovered the plaintiff's peril he failed to use ordinary care and diligence to stop the car and avoid the injury; that he failed to give warning of the approach of the car; and that he was running at a high and dangerous rate of speed, and negligently and carelessly failed to have said car under control when approaching plaintiff; and these allegations of negligence are all predicated with reference to the fact that plaintiff's horse, without any fault or negligence on his part, had become fractious and unmanageable and beyond his control, and got upon defendant's track, and that plaintiff was without negligence in connection with the injury. Each of these allegations of negligence is denied. They were all submitted to the jury, and, except with reference to the allegation of failure to give warning, there is no contention but that there is some evidence to support a finding against the defendant. The errors assigned relate to the giving and refusal of instructions, the overruling of a motion for a new trial on the ground that the verdict of the jury was the result of passion and prejudice, and the exclusion of certain evidence.

Cousel for defendant asked an instruction in which the duty of the jurors to confine themselves to a consideration of the particular acts of negligence set out in the petition was stated, negligence was defined, and the rule as to preponderance of the evidence was given in the ordinary form, except that the phrase employed was "preponderance of the testimony." So far as we see, there is no good reason why this instruction should not have been given, the misuse of "preponderance of testimony" for "preponderance of evidence" being probably not very material. But we do not see in this case any particular reason for elaboration on this point. Jurors are presumed, as ordinarily intelligent men, to know how to compare conflicting statements and determine which of these statements they shall believe. The court told the jury, in an instruction given, that before "the plaintiff can recover in this action, if at all, he must satisfy you by a fair preponderance of the evidence that the material allegations of his petition are true, and that defendant's negligence caused the injury complained of, and that he himself was not guilty of any negligence which directly contributed to such injury." This instruction is in general correct, as far as it goes; it confines the jury to the consideration of the allegations of plaintiff's petition, and it leaves the jury to determine by a fair preponderance of the evidence the truth of such allegations. It might be material in some cases to explain in detail what is meant by "fair preponderance," but we can hardly think that in a simple case such as this was, where there is nothing but the usual conflict between the accounts given by the various witnesses, it was error not to go further into that matter. Counsel for appellant urge that the attention of the jury should have been called to the opportunity of the several witnesses to see and understand the things about which they testified, and their interest or lack of interest in the event of the suit, but there seems to be no doubt

that all the witnesses who did testify had opportunity to know what they were testifying about, and the nature of the interest of the different witnesses in the result was so obvious that we can hardly assume that the jurors would not take this into account. We think the refusal to give the instruction asked was not prejudicial.

In connection with the instruction we have just been considering we should note a criticism of the use of language by the court, in this and other instructions, indicating that the jury should be "satisfied" with reference to matters which it was the duty of plaintiff to prove. Undoubtedly, some expressions to this effect were erroneous, and could have been complained of on behalf of the plaintiff, but they require a greater amount of proof than was necessary to sustain the verdict, and we see no reason for objection on the part of defendant in this respect. We can hardly think that the expressions used could have been construed by the jury, as counsel for defendant suggests, as authorizing a finding for plaintiff, if the jury was satisfied in some other way than by the evidence.

In another instruction asked it is stated as a matter of law that it was not the duty of the motorman to stop the car or check its speed unless he saw plaintiff's horses showing signs of uneasiness or fright , but that it was only his duty to stop the car as quickly as he could, in the exercise of ordinary care, as soon as he saw plaintiff's peril. This we think is not a correct proposition of law. Much must depend on the rate of speed at which the car is going, the extent to which the person in charge of the animals appears to have lost control thereof, and the imminence of the danger that they will get upon the track, in the way of the car, so as to imperil their own safety and that of the person in control of them. In other words, we do not understand it to be the rule that the motorman of a street car may run his car at a high rate of

speed, even though such speed would not in itself be unlawful, notwithstanding he sees that a person on the street is liable to be dragged or taken upon the track, and is under no obligation to check his car or prepare to avoid a collision until it becomes certain that a collision will take place unless the car is stopped.   According to the instruction asked, there is no duty on the part of the motorman to do anything until the animals in such a case actually obstruct the passage of the car.   The whole subject is elaboratley discussed in 2 Thompson on Negligence, sections 1374-1422, inclusive.   But the rule requiring the motorman of an electric car to do what he reasonably can to avoid a danger which is reasonably apparent seems to us too elementary to require elaborate citation of authorities.   It would certainly not be necessary in all cases that the car be stopped as soon as it is evident that animals on the highway have become uneasy and even frightened, but it certainly is his duty to take reasonable steps by way of reducing the speed of the car to avoid an injury which he may anticipate as likely to result from the frightened condition of animals on the street.   Another objection to the instruction, and one which applies to other instructions asked, is that it limits the duty of the motorman to cases where he sees the peril of persons on the street.   This question is quite elaborately argued, and counsel for appellant contend that the motorman owes no duty to any one on the street until he becomes aware that such person is in a perilous position.   In support of this proposition they cite many cases, but they are cases relating to the management of railway engines and trains on a right of way where the public has no right to be, and where there is no duty to anticipate danger of collision with persons on the track. Such cases are not in point.   The question discussed in them is the duty of the railway employes to avoid injury to one who is negligently upon the track after the peril resulting from his negligence has become apparent.   But

persons who are using the public streets on which a car
line is operated have a right to the use of the whole of
such street, and are not negligent *per se* in being on or
near to the street car track, and it plainly is the duty of
the motorman to be on the lookout for the purpose of
avoiding collision with and injury to persons using the
street. This rule was stated by the trial court in instruc-
tions of which no reasonable complaint can be made, and
we think that it was not error in the lower court to refuse
to give the instruction asked.

Complaint is made of refusal to give instructions em-
bodying the proposition that if there was another and rea-
sonably convenient street which plaintiff could have taken
in going from Cedar Rapids to Marion, and he had no
knowledge as to how the horses, or either of them, would
act at the approach of an electric car from behind, it was
negligent for him to take his horses along the street on
which defendant's line was operated. And complaint is
also made of an instruction given in which the jury was
told that if plaintiff knew that the horses in his charge,
or either of them, might become frightened and unmanage-
able on the approach of a car, and he might have taken
another road easily accessible, and thereby avoided the
cars, and failed to do so, "this will be for your considera-
tion," and left it to the jury "whether such neglect on the
part of plaintiff contributed to the injury." The court
had already told the jury in another instruction that be-
fore plaintiff could recover he must show that "he was not
guilty of any negligence which directly contributed to said
injury." We do not think that it constitutes negligence
*per se* to take horses along a street on which a street car
line is operated, without knowledge as to what will be the
probable conduct of the horses on the approach of a car.
It certainly cannot be true as a matter of law that one
taking animals upon a street along which an electric car
will pass should have first tested or made inquiry as to the

probable conduct of the animals on the approach of such a car. These are considerations for the jury. There is no reasonable controversy as to the duty of one going upon a street to avoid a known danger, and the court correctly said that, if the plaintiff knew that it would be dangerous to take the horses along this street, then, if he could without serious inconvenience have taken another street, it was his duty to do so. But that, we think, is as far as the rule goes. It was not for the court to say as a matter of law, in the absence of proof of knowledge on the part of plaintiff that the horses would probably be frightened by an electric car, that it was his duty to know whether they were likely to be frightened, and to take another street if he did not have that knowledge. *Sylvester v. Town of Casey*, 110 Iowa, 256.

The views we have expressed dispose of the objections to refusal to give instructions, and also of the objections to the instructions given. The general objection that the jury were not confined to a consideration of the grounds of negligence set out in the petition is not well taken, for the court specified these grounds in stating the issues, and the jury could not, in the light of what was said in the instructions taken together, have failed to understand that the findings of negligence referred to were limited to such grounds of negligence as were thus stated.

As to the complaint that the verdict was the result of passion and prejudice, it is enough to say that the only evidence of passion and prejudice relied on is the amount of damages named in the verdict. It is not contended but that there was some evidence to support a verdict, and therefore the mere fact that a verdict was found for the plaintiff would certainly not indicate passion and prejudice. It is true that the trial court found the amount of the verdict to be excessive, and refused a new trial only on condition that a considerable amount should

be remitted. But an excessive verdict is not necessarily a verdict which results from passion and prejudice. We could not assent to a proposition that wherever the trial court finds that the verdict was for too large an amount in cases of personal injury, we should conclude that it ought to have been entirely set aside on the other ground. The amount for which the verdict was allowed to stand is large, but there was a considerable conflict in the evidence as to the nature of plaintiff's injuries. They appear to involve permanent partial disability, a tilting of the frame of the body, as it is described, by which one leg remains permanently higher than the other, causing plaintiff to limp, and disqualifying him from some kinds of labor. We would not feel justified in requiring a further reduction of the amount of plaintiff's recovery.

One assignment of error relates to the exclusion of testimony of a physician who was consulted by plaintiff, but, not being called for plaintiff as a witness, was called for defendant. The objection was made for plaintiff that the physician could not testify, under Code, section 4608, which prohibits a physician or surgeon from disclosing any confidential communication intrusted to him in his professional capacity. Counsel for appellant urge that this witness was not consulted as a physician with reference to the treatment of plaintiff, but only for the purpose of securing his testimony as a witness, and that therefore the statute does not apply to him. We are not referred to any authorities which make this distinction. It seems to us that whenever an injured party consults a physician, as physician and discloses to him his physical condition, and thus enables him to obtain information which as an ordinary person he would not have obtained, such physician is prohibited from testifying with reference to the knowledge thus obtained, except with the consent of the injured party.—AFFIRMED.

LADD, C. J., dissents