The claim was originally filed in two counts, the first being based on decedent's oral promise to bequeath claimant $1,000, and her breach thereof by bequeathing but $100, thereby leaving a balance of $900 owing claimant. The second count, after amendment, was based on quantum meruit for alleged services rendered over a period of twenty or more years in decedent's household, of the reasonable value of $900, no part of which had been paid. Near the close of the case, and apparently not in the presence of the jury, claimant dismissed count one.
Decedent and her husband operated a farm near Webster City for many years. In 1916 they took into their home, out of the state school at Mitchellville, the claimant. She was a stranger to them and about seventeen years old. She worked in the home for about a year, for wages which she admits receiving. After working elsewhere for a time she married and moved to *Page 755 
Minnesota. Later she and her family moved onto a farm about ten miles from the Hollis home, where they lived for about fourteen years, or until they moved to Webster City. In 1940 the decedent and her husband, Frank Hollis, left the farm and moved to Webster City. There the husband died in February 1942, and the decedent in November of that year.
The claimant testified, and there is some corroboration by others, that during the time Mr. and Mrs. Hollis were living on the farm and in Webster City she was at their home many times each year, performing household services consisting of laundry work, cleaning, and customary work about the home, and sometimes personal care of the decedent.
The executrix admits that occasionally the claimant, during the last year or two of decedent's life, performed some services in the Hollis home, but alleges that for any and all services which she performed for the decedent or the latter's husband, at any time, she had been fully paid.
Since there may be another trial upon this claim we will not review the testimony nor discuss it further than is necessary for a decision of the particular issues submitted on the appeal.
Defendant's motion for new trial was based upon thirteen separate grounds, each and all of which were expressly overruled by the court, except the third ground, alleging that "the verdict is grossly excessive," which was sustained.
There was evidence, much of it by direct testimony of the claimant, that she had been paid at different times for the services performed by her, by Mr. Hollis, while he lived, or by the decedent after his death. Neither the testimony of the claimant nor any other evidence discloses the specific total amount the claimant was paid. But there is evidence by which the jury could have computed that claimant was paid a substantial sum for services performed. The court instructed the jury that it should credit the defendant for any such sums it found had been paid. The jury allowed claimant her full claim of $900, without crediting thereon any payments.
Claimant testified as follows:
"When I would go up there to wash, Grandpa would give me fifty cents, and if they had lard more than they needed, I *Page 756 
took two or three pounds of lard or something like that. They figured that was my payment at that time. Q. What do you mean, Mrs. McCollough? A. Well, that was supposed to have been payment for what I did or my services. * * * Q. How often were you there, tell us that? A. Well, I was there once or twice a month all of the time. * * * Q. While you lived six miles out of town? A. Yes. * * * Q. Who paid you for that? A. Part of the time Grandpa would give me fifty cents or a dollar, and part of the time he didn't give me anything. Q. How often didn't he give you anything? A. I never kept track of it. Q. Well, if you don't know the jury can't be expected to. At times when he paid you a dollar you took that as pay for your work, didn't you? A. Yes. * * * Q. Did Mr. Hollis pay you for those times? A. Well, if he did it was just like other times. He give me fifty cents or a dollar. Q. Did he pay you when you were out there and did the work? A. Some of the times and sometimes he didn't. Q. Sometimes he would pay you as much as a dollar for coming out there? A. Yes. Q. Did you take it? A. Yes. * * * Q. Mr. Hollis was the paymaster, wasn't he? A. Well, he was when she could get it across for him to. Q. Well, whenever he paid you — or whenever you were paid, he was the fellow that paid you, wasn't he? A. He was up until the last year of his life. Q. Of course, after he got so sick, and after his death, he couldn't pay you, but during all those years out in the country when you would go to see them from time to time and he gave you a dollar or fifty cents, he was the fellow that paid you? A. Yes. * * * A. I went to visit, and when they needed help I went to help. Q. Did they pay you when you went to help? A. Yes. Q. Did you get paid when you went there to help or didn't you? A. I didn't get what I should have had. * * * A. I went every two weeks to wash and clean and spent all day. I got fifty cents for the washing. Q. The washing didn't take more than about half a day, did it? A. No. Q. Don't you think that was pretty fair? A. No, I don't. Q. Did you make any objection to it? A. No, I didn't tell them anything about it. Q. That was while Grandpa Hollis lived, and he paid you? A. Yes. * * * Grandpa paid me for the washing while he lived, but after Grandpa died I didn't get *Page 757 
it. I didn't ask anybody for it. * * * Q. You remember at the last trial you said they always paid you when you did any work for them? A. I don't remember as to that. If it is in the record it is possible that I said it. I think I meant at that time, if I remember right, that I was paid for the washing, but as to the other work, there was lots of other work that I did that I didn't get paid for. * * * Q. After Mr. Hollis died every time you went up there and did the washing she paid you? A. Well there were a few times she didn't. She didn't pay me every time. Q. But every once in a while she would pay you? A. Yes."
From her own admissions, as above set out — and the record discloses no reason why they should not have been believed — the jury could have found that during the eighteen or twenty years of her service she did the washing at the Hollis home every two weeks and that she was paid for the same, although there was other work for which she was not paid. These payments over these years would amount to a substantial credit. The appellant makes a claim that the jury might have been warranted in finding these payments were but gifts to her. At one place in her testimony she said that occasionally when Mr. Hollis gave her fifty cents or a dollar for her services she considered the "payments" as gifts. The jury could not have found these amounts to have been gifts without disregarding the instructions to the jury.
[1] I. We held in In re Estate of Willmott, 211 Iowa 34, 38,230 N.W. 330, 332, 71 A.L.R. 1018, "that payments of money made by a debtor to an existing creditor, or made by one who is under obligation to pay to the receiver thereof, will be deemed presumptively to apply as credits upon the obligation, and not as gratuities or gifts." This is sound law.
[2] II. The appellant contends that the court erred "in setting aside the verdict and granting a new trial in a case based on contract on the sole ground that the verdict was `excessive' where there was no indication of passion or prejudice, and where the rules of procedure provide a further ground (e) applicable to error in fixing the amount of the recovery in contract cases." *Page 758 
In support of this assigned error, appellant first relies upon Rule 244 (d) and (e), Rules of Civil Procedure, which provides that a new trial may be granted for specified causes, to wit:
"* * * (d) Excessive * * * damages appearing to have been influenced by passion or prejudice; (e) Error in fixing the amount of the recovery, whether too large or too small, in an action upon contract * * *."
Appellant argues that (d) of the Rule is no proper basis for the court's holding that the verdict was excessive because it applies only to tort cases in which the verdict was influenced by passion or prejudice; and that (e) of the Rule, as it affects this case, is not a proper basis because it applies only to contracts and not to verdicts for damages influenced by passion or prejudice. The court in its order for new trial simply sustained the motion for new trial on the alleged ground that the verdict was excessive. It did not state that the ruling was based upon (d) or (e) of Rule 244, or that the verdict was influenced by passion or prejudice, and we do not find it necessary to decide, nor do we decide, that subdivision (d) applies only to tort cases. However, we may say, as obiter, that this court has upheld the granting of new trials, or their denial because of remittitur, in tort cases because the verdicts were excessive, notwithstanding there was no finding or no reason to find that the excess was the result of passion or prejudice. See Manders v. Dallam, 215 Iowa 137, 139, 244 N.W. 724; Doran v. Cedar Rapids 
M.C. Ry. Co., 117 Iowa 442, 449, 450, 90 N.W. 815; Carmichael v. Bettendorf Axel Co., 171 Iowa 221-224, 153 N.W. 1005; Sawyer v. Iowa C.P.A. Assn., 177 Iowa 218, 223, 224, 158 N.W. 679; Ahrens v. Fenton, 138 Iowa 559, 561, 562, 115 N.W. 233.
Subdivisions (d) and (e) of Rule 244, except for the factor of inadequacy in (d), are the same as subdivisions 4 and 5 in section 11550, Code of 1939, which have been a part of our statutory law since the Revision of 1860.
Subdivision (e) of Rule 244, by its express language is a ground for new trial where there is error by the jury in fixing the amount of recovery on a contract in "too large" an amount, *Page 759 
or, in other words, in an "excessive" amount. There is no merit in this contention of appellant.
[3] There is also no merit in appellant's point that since the court's ruling was based on a single specified ground of the motion, which it sustained, and all other grounds thereof were expressly overruled, the ruling of the court in sustaining the ground involved a definite question of law and not one of fact, and that therefore the court had no discretion in the matter.
The court is in full agreement with our past decisions, insofar as they touch upon the point, in Kessel v. Hunt, 215 Iowa 117,123, 244 N.W. 714; Manders v. Dallam, supra; Hart v. Stence,219 Iowa 55, 59, 257 N.W. 434, 97 A.L.R. 535; Piper v. Brickley,220 Iowa 1090, 264 N.W. 29; Thompson v. Butler, 223 Iowa 1085, 1091,274 N.W. 110. None of these cases, nor Rule 118 of the Rules of Civil Procedure, has application to this case. The appellee is not appealing and claims nothing under the other grounds of the motion, which were overruled. The question of whether the verdict was excessive was not one of law but was a question of fact under the record made, and the answer was one resting in the legal discretion of the court. The matter for the determination of this court is whether that discretion was abused. It is our judgment that it was not. In Rogers v. Jefferson, 226 Iowa 1047, 1052,285 N.W. 701, 704, the court said:
"Ordinarily the action of the trial court in granting or refusing to grant a new trial on the ground of excessiveness of a verdict will not be disturbed on appeal unless an abuse of discretion is shown." See cases cited.
[4] III. The district court has a wide discretion in passing upon a motion for a new trial. It is with reluctance, and on comparatively rare occasions, that this court interferes with that discretion. It requires a clear case and upon the affirmative showing that discretion was abused to justify such interference. And the reluctance to interfere is greater when a new trial is granted than when the relief is denied. We have so held a great many times. For a few of those decisions, see Sheridan Bros. v. Dealy, 198 Iowa 877, 878, 200 N.W. 335; Post v. City of Dubuque, 158 Iowa 224, 226, 227, 139 N.W. 471; Loomis v. *Page 760 
Des Moines News Co., 110 Iowa 515, 518, 81 N.W. 790; Lange v. Nissen, 204 Iowa 1080, 1082, 216 N.W. 697; Woodbury Company v. Dougherty Bryant Co., 161 Iowa 571, 573, 143 N.W. 416; Porter v. Madrid State Bk., 155 Iowa 617, 619, 620, 136 N.W. 666; Flickinger v. Phillips, 221 Iowa 837, 840, 841, 267 N.W. 101; Gregory v. Suhr, 221 Iowa 1283, 1291, 268 N.W. 14; Williams v. Kearney, 224 Iowa 1006, 1008, 278 N.W. 180; Bletzer v. Wilson,224 Iowa 884, 887, 888, 276 N.W. 836; Rupp v. Kohn, 210 Iowa 969,971, 232 N.W. 174; Leake v. Azinger, 214 Iowa 927, 929, 930,243 N.W. 196; Jelsma v. English, 210 Iowa 1065, 1068, 1069,231 N.W. 304; Blakely v. Cebelka, 199 Iowa 946, 948, 203 N.W. 19; Eby v. Sanford, 223 Iowa 805, 807, 808, 273 N.W. 918; Greene v. Lagerquist, 217 Iowa 718, 719, 252 N.W. 94; Ideal C.S.R. Works v. Des Moines, 167 Iowa 517, 522, 149 N.W. 640; Christensen v. Farmers Sav. Bk., 218 Iowa 892, 896, 255 N.W. 520, 256 N.W. 687; Harmon v. Loomis, 166 Iowa 119, 121, 147 N.W. 203; Crider v. McColley, 154 Iowa 671, 135 N.W. 364; Royer v. King's Crown Plaster Co., 147 Iowa 277, 278, 126 N.W. 168; Benefiel v. Semper,185 Iowa 410-412, 170 N.W. 737; Tathwell v. City of Cedar Rapids,122 Iowa 50, 51, 52, 58, 97 N.W. 96.
[5] This court at times has stated a test for determining whether a verdict should be set aside because of its excessiveness or inadequacy to be that it shocks the conscience. See Brause v. Brause, 190 Iowa 329, 337, 338, 177 N.W. 65, 67; Hall v. Chicago, B. Q. Ry. Co., 145 Iowa 291, 294, 295,122 N.W. 894; Remer v. Takin Bros. Freight Lines, 230 Iowa 290, 294,297 N.W. 297; Cody v. Toller Drug Co., 232 Iowa 475, 482,5 N.W.2d 824.
Without attempting to define or determine the full significance of the term, "shock the conscience," it clearly appears from many decisions of this court that this is not the sole test. A principle stated by Justice Cole, in Dewey v. Chicago N.W.R.R. Co., 31 Iowa 373, 377, 378, is that:
"Those courts [nisi prius courts] ought to independently exercise their power to grant new trials, and, with entire freedom from the rule which controls appellate tribunals, they ought to grant new trials whenever their superior and more *Page 761 
comprehensive judgment teaches them that the verdict of the jury fails to administer substantial justice to the parties in the case. Whenever it appears that the jury have, from any cause, failed to respond truly to the real merits of the controversy, they have failed to do their duty, and the verdict ought to be set aside and a new trial granted."
An examination of the many cases noted as citing the Dewey case shows that the rule therein stated has been many times cited and reannounced, and that it has never been departed from. In Porter v. Madrid State Bk., supra, 155 Iowa 617, 619, 136 N.W. 666, 667, the court said:
"* * * it has been specifically decided that, although the evidence is conflicting and the case was properly submitted to the jury, the court may, in the exercise of a sound discretion and on reasonable grounds of belief that an erroneous verdict has been reached, grant a new trial in order that the facts may be passed upon by another jury."
In Woodbury Company v. Dougherty Bryant Co., supra, 161 Iowa 571,573, 143 N.W. 416, 417, the court said:
"A trial court is justified, indeed, it is its duty, to set aside a verdict which does not effectuate justice, although there may be a conflict in the testimony; and when this is done, appellate tribunals should be slow to interfere."
In Crider v. McColley, supra, 154 Iowa 671, 135 N.W. 364, Justice Evans, for the court, said:
"Seldom has this court reversed an order granting a new trial. The discretion vested in the trial court at this point is an important one, and is entitled to every favorable presumption."
In Post v. City of Dubuque, supra, 158 Iowa 224, 227,139 N.W. 471, 472, we said:
"The trial court had, and always has, an opportunity to observe the trial as it proceeded step by step, the parties, their counsel, the witnesses and the jury, that this court has not and *Page 762 
can never have, and many things occur and are known to the court that may, and often do, convince the court that a fair and impartial trial has not been had. And yet these things, so observed, may not, and many times cannot, be made to appear in the record."
In Carmichael v. Bettendorf Axle Co., supra, 171 Iowa 221, 223,153 N.W. 1005, the court said:
"Courts have supervisory power over the verdicts of the jury, and where the verdict returned appears to the trial court as excessive, the court may fix an amount which, in its judgment, would be fair and right between the parties, and allow the plaintiff to accept that amount and judgment therefor or reject it, as he sees fit, and if he fails to accept, a new trial may be ordered, as was done in this case."
In Royer v. King's Crown Plaster Co., supra, 147 Iowa 277, 278,126 N.W. 168, 169, we said:
"This court has often admonished the trial court of its duty to exercise such discretion candidly and fearlessly * * *."
See, also, Brooks v. Brotherhood of American Yeomen, 115 Iowa 588,589, 88 N.W. 1089, Kern v. May, 92 Iowa 674, 676,61 N.W. 390, Sawyer v. Iowa C.P.A. Assn., supra, 177 Iowa 218, 223, 224,158 N.W. 679, and In re Estate of Goretska, 234 Iowa 1080,13 N.W.2d 432, 438, both majority and dissenting opinions, where the matter of granting new trials was recently fully discussed.
[6] IV. Appellant urges that the estate failed to carry the burden of establishing the credits, but we believe payments in such a substantial amount were shown as to justify the court in granting a new trial. In Mendenhall v. Struck, 207 Iowa 1094,1100, 224 N.W. 95, 98, we said:
"In the instant case, the uncontroverted evidence establishes the fact that the plaintiff did suffer actual or substantial damages from the killing of his pups. The principle involved is that a jury may not disregard the evidence and say that the property has no value, and, in an arbitrary manner or in accordance with their own opinion, say `no damage.'" *Page 763 
We have considered all matters urged by appellant and it is our judgment that the decision of the trial court should be upheld.
On a retrial, if there be one, the evidence may be different. In such case, judgment may be had in accordance therewith, and the trial court will not be bound by its former action and our approval thereof.
The judgment is affirmed. — Affirmed.
All JUSTICES concur.