ALLAN CURNUTT, appellee, v. LOUIS WOLF et al., a copartnership dba MASON CITY BROADCASTING COMPANY, appellants.

Nó. 48227.

(Reported in 57 N.W.2d 915)

684

APRIL 8, 1953.

Smith & Beck, of Mason City, for appellants.

Westfall, Laird & Burington, of Mason City, for appellee.

HAYS, J.—In November 1950 plaintiff commenced this action against the four defendants Wolf as copartners, doing business as the Mason City Broadcasting Company, for wages due under a contract of employment. In March 1951, by an amendment to his petition, designated as Division II, damages, actual and exemplary, were asked for mental pain and humiliation occasioned by wilful and malicious threats made to him by defendant Louis Wolf in a telephone conversation. A motion by defendants to separate Divisions I and II for purpose of trial was overruled. Motion by defendants Wolf, other than Louis, to dismiss Division II was sustained. Motion by Louis Wolf to withdraw from the jury all claim for exemplary damages was sustained. The jury returned a verdict on Division I, allowing plaintiff the amount asked thereunder. On Division II a verdict for $7500 was returned. Motions for judgment notwithstanding the verdict and for a new trial were overruled, and from the judgments entered all defendants have appealed.

The facts, so far as material here, are as follows: Defendants Wolf, as copartners, operated Radio Station KICM, later called KRIB, at Mason City, Iowa. In January 1950 they em-

ployed plaintiff as general manager of the station for one year with an automatic renewal clause in the contract. The salary was $150 per week plus 20% of net profit after taxes. On July 14, 1950, plaintiff was discharged. In October 1950 he was employed as manager of Radio Station KOOK at Billings, Montana. In November 1950 this action was commenced to recover wages due under the contract above-mentioned. On December 18, 1950, defendant Louis Wolf called plaintiff at Billings, Montana, by telephone, and the conversation which is the basis for Division II of this action took place.

Generally speaking, this appeal concerns only Division II and presents two questions: (1) Does the record present such facts as create a cause of action? (2) If so, is the amount awarded by the jury excessive?

I. Has plaintiff made out a cause of action? May one recover for mental pain and suffering which is not accompanied by any physical injury? The entire case is based upon the telephone conversation of December 18, 1950, which telephone call is conceded to have been made by defendant Louis Wolf. Plaintiff's version of the conversation, stated somewhat in our own manner, and with Louis Wolf as the questioner, is as follows: "Q. How are you? A. Fine. Q. Are you happy at Billings? A. Yes. Q. Do you want to stay out there? A. I would like to and plan to, why? Q. Well, if you want to stay, do you know Carter Johnson? A. Yes, he is the vice-president of our company. Q. Well, if you want to stay out there, better drop this suit at Mason City. A. Lou, I have no intention of dropping that suit; you owe me the money, and you know it. Q. Carter Johnson wrote me a letter and asked me all about you. If you will drop that suit, I will write him a good letter. I will give you until noon tomorrow to make up your mind. A. Don't give me until tomorrow noon, or any other noon. Write the letter this afternoon. I won't drop this suit even if you lose me this job; this job has no connection with my suit in Mason City."

Defendant's version of this conversation is as follows: After receiving a letter from Carter Johnson, he called plaintiff at Billings, Montana, and said: "Al, this is Louis Wolf talking. Just this morning I received a letter from Mr. Johnson of the

Montana Broadcasting Company, wanting a letter. He wanted a letter from me regarding your ability. Suppose I didn't answer that letter. Would you be willing to drop the lawsuit? He said he would have to think about it so I said let me hear from you in a couple of days."

The record shows that under date of December 14, 1950, Carter Johnson, Vice-president of the Montana Broadcasting Company, wrote a letter to the Mason City Broadcasting Company relative to plaintiff. It said in part: "We are not asking for a recommendation, but for a true statement as to your opinion of this man as to both his character and his ability. Any information * * * will be strictly confidential if you wish it to be so." On December 20, 1950, Louis Wolf replied to the December 14th letter. It said in part: "I wish to state that I am not in a position to give you any satisfactory references as our association with Mr. Curnutt was a very unpleasant one. In fact, at the present time he is suing us in the amount of $4100. My personal advice to you would be not to sign a contract with the gentleman as you might have the same unhappy circumstances as we have had. * * * This letter is not confidential."

Plaintiff, in Division II, alleged that the threats in the telephone conversation were made wantonly and with malice and for the purpose of producing mental pain, anguish and humiliation; and as a result thereof he so suffered. As a witness he stated: "Q. Mr. Curnutt, tell us how it affected you, that is, the conversation you had with Mr. Wolf. A. Well, it is pretty hard to describe it. The next two or three weeks I just was at a loss as to what to do. I was completely upset, I had gone through a long period * * * trying to secure a manager position and I thought if this threat was carried out, I would be out of a job again * * *." He further testified that it caused him worry both day and night. The record shows that his employment with Station KOOK terminated on January 15, 1951, and he saw the letter from Wolf to Johnson on January 17. It should be noted, however, that the loss of his position with Station KOOK does not enter into the question of damages sustained.

As to the legal question involved the authorities are not in accord, and appellant cites cases from many states to the

effect that no tortious act was committed under the facts herein; and, hence, no recovery. Among authorities cited is Restatement of the Law of Torts, Vol. I, chapter 2, section 46, comment c, page 87, to the effect that "Conduct, either of act or omission, which is intended or likely to cause only mental or emotional distress is not tortious. Therefore, it cannot subject the actor to liability no matter what its consequences." However, Restatement of the Law of Torts, 1948 Supp., section 46, page 612, states: "One who, without a privilege to do so, intentionally causes severe emotional distress to another is liable (a) for such emotional distress." In comment thereon it is said:

"An intention to cause severe emotional distress exists when the act is done for the purpose of causing the distress or with knowledge on the part of the actor that severe emotional distress is substantially certain to be produced by his conduct. * * * If an act is done with the requisite intention, it is immaterial that the actor is not inspired by any personal hostility to the other. * * * The interest in freedom from severe emotional distress is regarded as of sufficient importance to require others to refrain from conduct intended to invade it. Such conduct is tortious."

See also Calvert Magruder—Mental and Emotional Disturbance in the Law of Torts, 49 Harvard L. Rev. 1033; 15 A. L. R.2d 108; 17 A. L. R.2d 929.

The Iowa authorities upon this proposition are not entirely uniform. The early decisions, Lee v. City of Burlington, 113 Iowa 356, 85 N.W. 618, 86 Am. St. Rep. 379, Watson v. Dilts, 116 Iowa 249, 89 N.W. 1068, 57 L. R. A. 559, 93 Am. St. Rep. 239, and Kramer v. Ricksmeier, 159 Iowa 48, 139 N.W. 1091, 45 L. R. A., N. S., 928, appear to support appellant's contention, but a careful reading shows that no issue or distinction is made between a negligent and a wilful act. In Barnett v. Collection Service Co., 214 Iowa 1303, 1307, 1312, 242 N.W. 25, 26, 28, Justice Faville, speaking for the court, reviews the Iowa decisions as well as many from other jurisdictions. The case was based upon a series of letters written in an attempt to collect an overdue account. The court said:

■ "The jury could find from the evidence, that the appellants' acts were wilful, and were done for the express purpose of affecting the appellee mentally by harassing and annoying the appellee and causing her mental pain and anguish. * * * The rule seems to be well established that, where the act is wilful or malicious, as distinguished from being merely negligent, recovery may be had for mental pain, though no physical injury results."

■ In the instant case the exact telephone conversation was a dispute of fact for the jury. It apparently believed appellee's version. So believing, when viewed in connection with the letter written by appellant, a wilful and malicious intent to cause mental pain and anguish could well be found. We think the rule as announced in the Barnett case represents the modern and correct rule and is applicable here. We find no merit in this assignment.

II. Appellant further asserts that the verdict under Division II is the result of passion and prejudice; is excessive; and a new trial should be granted. The award was for $7500.

■ As before stated, appellee pleaded malice and asked for both actual and exemplary damages. The appellant moved the court to withdraw from the jury the issue of exemplary damages "for the reason that exemplary damages in this case must of necessity be merged as compensatory damages and cannot be recognized as an independent recovery." This motion was sustained. Appellee contends that both actual and exemplary damages should have been submitted to the jury, and this court may properly view the award as comprising both actual and exemplary damages, citing such cases as Gustafson v. Wind, 62 Iowa 281, 17 N.W. 523, and Davis v. Seeley, 91 Iowa 583, 60 N.W. 183, 51 Am. St. Rep. 356. These cases hold that where the petition alleges malice and the jury finds it established by the evidence, they are warranted, *under proper instructions of the court,* to allow exemplary damages although not specifically asked for in the petition.

Had the trial court accepted appellant's theory as set forth in the motion to withdraw the issue of exemplary damages; and had the trial court instructed the jury as to exemplary damages;

whether such would have placed this case in the category of cases such as Davis v. Seeley, supra, quaere? The trial court not only withdrew the question of exemplary damages but also refrained from instructing thereon. The cited cases are not in point and the award must be considered solely as compensatory.

In overruling the motion for a new trial, the trial court said:

"The court observed to the best of his ability the trial of this case and nothing has been brought to the court's attention which would lead the court to believe that the jury in rendering its verdict was ruled by passion or prejudice except the claim that the verdict is excessive. I am of the opinion that the amount of damages allowed is not so excessive as to indicate that the verdict was the result of passion or prejudice; and that, therefore, the defendants are not entitled to a new trial on this ground."

■ The granting or refusing a new trial rests in the sound judicial discretion of the trial court and only where an abuse thereof appears should this court interfere. Johnson v. Sioux City, 220 Iowa 66, 261 N.W. 536. We find no abuse here.

■ However, this court has, through a long line of decisions, recognized the fact that an excessive verdict is not necessarily a verdict which results from passion and prejudice, and that justice may be effectuated by a remittitur. Doran v. Cedar Rapids & Marion City Ry. Co., 117 Iowa 442, 90 N.W. 815; Brause v. Brause, 190 Iowa 329, 177 N.W. 65; Scott v. Hinman, 216 Iowa 1126, 249 N.W. 249; In re Estate of Hollis, 235 Iowa 753, 16 N.W.2d 599.

■ Appellee's sole claim of injury was that of mental strain and stress covering a period of time between December 18, 1950, when the telephone conversation took place, and January 15, 1951, when he was removed from his position with Station KOOK. The jury could find, under the record, that such mental suffering was acute, but we are of the opinion that the award of $7500 exceeds what would be a fair and reasonable compensation therefor, and that an award of $4000 would be as large as should be upheld.

Appellant has assigned other errors as a basis for a reversal, which we have examined and find no merit therein.

For the reasons above set forth, the judgment of the trial court is affirmed, conditioned upon appellee filing in said court a remittitur as to Division II of all in excess of $4000; otherwise reversed and remanded for a new trial.—Affirmed on condition.

All JUSTICES concur.